UNITED STATES of America, Appellee,

v.

William RUFFIN, Defendant-Appellant.

No. 559, Docket 78-1361.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1979.

Decided Dec. 28, 1979.

Cora T. Walker, New York City (Walker & Bailey, New York City, of counsel), for defendant-appellant.

Larry Jay Silverman, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before MOORE, MANSFIELD, Circuit Judges, and WYATT, District Judge.*

MANSFIELD, Circuit Judge:

William Ruffin appeals from a judgment of the District Court for the Eastern District of New York entered by Judge Mark A. Costantino on September 29, 1978, following a jury trial, convicting Ruffin of three counts charging that he and his co-defendant Olga Defreitas had obtained by fraud from Community Sponsors Inc., Young Mothers Training Program (YMP) monies that were the subject of federal financing under the Economic Opportunity Act of 1964 as amended, all in violation of 42 U.S.C. § 2703. Ruffin was acquitted of a fourth count charging him and Defreitas, YMP's director, with conspiracy in violation of 18 U.S.C. § 371 to obtain the monies by fraud. A fifth count, charging both defendants with a substantive violation of § 2703 was dismissed before the case was submitted to the jury. Appellant's co-defendant Defreitas was acquitted of the four counts submitted to the jury.

The central issue raised on this appeal is whether a person incapable of personally committing a specified crime (in this case because he was not an officer, director, agent or employee of an agency receiving federal financial assistance) who causes an innocent agent meeting the capacity requirements to engage in the proscribed conduct may be punished as a principal under 18 U.S.C. § 2. We hold that he may and affirm.

* Of the United States District Court for the Eastern District of New York, sitting by designation.

Title 42 U.S.C. § 2703 provided in pertinent part that

"Whoever, being an officer, director, agent, or employee of, or connected in any capacity with, any agency receiving financial assistance under this chapter embezzles, willfully misapplies, steals, or obtains by fraud any of the moneys, funds, assets, or property which are the subject of a grant or contract of assistance pursuant to this chapter, shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

The statute was part of the Economic Opportunity Act of 1964, as amended, 42 U.S.C. § 2701 (the "Act"), an omnibus antipoverty law designed to provide several types of aid programs to be administered at state and local levels with massive federal fund assistance. The Act provided for the funding of Urban Community Action programs, called "community corporations" and their independent components or delegate agencies (42 U.S.C. §§ 2701, *et seq.*). Federal and local funds were allocated and distributed to these community corporations and agencies in New York City through an administrative hierarchy (Office of Economic Opportunity, Human Resources Administration, and Community Development Agency).

In the present case the fund grants were at all relevant times channeled through a community corporation known as Bedford-Stuyvesant Young in Action Community Corporation (BSYIA) to delegate agencies, including YMP, which had entered into contracts with the New York City Human Resources Administration to provide medical, educational and economic assistance to young pregnant unwed women in the Bedford-Stuyvesant district of Brooklyn. In order to function YMP required headquarters and housing, which led to the frauds forming the basis of the prosecution of Defreitas and Ruffin.

Olga Defreitas was the executive director of YMP. William Ruffin was her close personal friend. From October 1970 to August 1974 they arranged to have YMP lease from Rugore Associates, Inc., of which Ruffin was the sole stockholder and president, an unused, uninhabitable, condemned, unsafe building at 1402 Bedford Avenue, Brooklyn, to be used by YMP after the building had been renovated according to the lease agreement and architect's specifications. In 1969 Ruffin had purchased the run-down premises for $35,000 after persuading Defreitas that it could be renovated and leased by YMP. By a separate agreement BSYIA community corporation, of which YMP was a delegate agency, then engaged a private contractor to renovate the premises on the understanding that Ruffin would pay one-half the cost. However, the contractor was unable to complete the project and ceased work by January, 1970.

Notwithstanding the condition of the 1402 Bedford Avenue premises and the cessation of renovations, Ruffin, although he knew that the renovation would not be completed and that the building was doomed to be demolished, influenced Defreitas to obtain the necessary rubber-stamp authority from YMP's Board of Directors to continue leasing the premises from October 1970 through August 1974 from Rugore Associates, for which Ruffin received rentals totalling $115,000. The rental checks, which amounted to 25% to 35% of YMP's total yearly program budget during this period, were paid to Ruffin and deposited by him in his personal bank accounts. During the same period Ruffin made various payments to Defreitas personally or for her account, totalling approximately $30,000.

The four substantive counts of the indictment charged that at various times from December, 1970, to October, 1974, Defreitas and Ruffin obtained by fraud and misapplied monies which were the subject of a contract of assistance under the Act, causing the monies to be paid by YMP to Ruffin as rent for the 1402 Bedford Avenue building, although they both knew that the building was not in fact occupied by YMP, was "in an uninhabitable condition," and was never "rendered habitable" in accord-

ance with obligations undertaken by Ruffin. Although Defreitas was the only defendant who was a "director" and "employee" of an agency receiving federal funds, each of the substantive counts charged that the two defendants jointly, without distinction between them, engaged in the alleged conduct in violation of 42 U.S.C. § 2703 and of 18 U.S.C. § 2, which provides as follows:

> "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> "(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

After reading both of the foregoing sections to the jury as part of his instructions to the jury, the trial judge instructed the jury:

> "In other words, every person who wilfully participates in the commission of a crime may be found to be guilty of that offense. Participation is wilful if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.
>
> "Accordingly, you may find the defendant William Ruffin guilty of the offense charged in Counts Two, Three and Four if you find beyond a reasonable doubt that the defendant Olga Defreitas committed the offenses with which they were charged in those counts and that the defendant William Ruffin aided and abetted her. Otherwise, you must acquit.
>
> "In order to aid and abet another to commit a crime it is necessary that the accused wilfully associate himself in some way with the criminal venture, and wilfully participate in it as he would in something he wishes to bring about; that is to say, that he wilfully seek by some act or omission of his to make the criminal venture succeed."

The words "Otherwise, you must acquit" had not been requested by either side,[1] nor did the Government's request suggest that Ruffin's guilt was dependent on Defreitas' guilt. To the contrary, the Government asked the court to instruct the jury that "A defendant may be convicted as an aider and abettor even though the person charged as principal is acquitted. *United States v. Lugo-Baez,* 412 F.2d 435, 440 (8th Cir. 1969)."

Apparently confused by the court's instruction on the subject the jury, after deliberating for a short while, sent a note to the judge inquiring "Four [sic] counts 2, 3 and 4, is it possible to find one defendant guilty and the other not guilty." In a long colloquy with the court (Tr. 1535–1590) regarding the note, during which jury deliberations were suspended, the Government took the position that the jury could under 18 U.S.C. § 2(b) find Defreitas not guilty on the substantive counts and hold Ruffin guilty on those counts. Ruffin's counsel took the contrary position, that Ruffin could not be found guilty unless Defreitas was also found guilty. Numerous decisions and authorities on the issue were cited, quoted in part, and read by the trial judge, including *United States v. Wiseman,* 445 F.2d 792, (2d Cir. 1971); *United States v. Lester,* 363 F.2d 68, 73 (6th Cir. 1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967); *United States v. Bryan,* 483 F.2d 88 (3d Cir. 1973); and *United States v. Grasso,* 356 F.Supp. 814 (E.D.Pa.), *affd.,* 485 F.2d 682 (3d Cir. 1973). The Government specifically pointed to the amendment of § 2(b) in 1951 as showing that a person may be convicted as a "causer" even though not legally capable of personally committing the act forbidden by a federal statute and even though the agent willfully caused to do the act was herself guiltless. After a detailed review of the authorities in open court, Judge Costantino decided that his earlier instruction on the subject of aiding and abetting had been too limited but that it was "not harmful to the

1. Neither party commented on the applicability of 18 U.S.C. § 2 in summations.

defendants" but "harmful to the Government." He thereupon decided to send a note to the jury on the subject, stating:

"Of course, it's under that case [*United States v. Wiseman*, 445 F.2d 792 (2d Cir. 1971)] and all the other cases that have been reviewed by the Court and all the arguments that have been proffered before the Court that the Court comes to the following determination—that it will submit to the jury the following answer to the question submitted to the Court as follows:

"'It is possible to find one defendant guilty of Counts 2, 3 and 4 and not find the other defendant guilty of those counts.'

"Signed Judge Constantino [sic]. It's Court Exhibit 4."

Neither side requested a more detailed or amplified statement in response to the jury's note.

The jury acquitted Defreitas on all counts. It acquitted Ruffin on the conspiracy count (Count One) and found him guilty of the three substantive counts (Two, Three and Four). From the judgments of conviction on these counts Ruffin appeals.

## DISCUSSION

To the extent that Ruffin was charged under 18 U.S.C. § 2(a) as an "aider" and "abettor" of Defreitas' alleged criminal conduct, he could not be found guilty unless Defreitas as a principal had violated 42 U.S.C. § 2703. It is hornbook law that a defendant charged with aiding and abetting the commission of a crime by another cannot be convicted in the absence of proof that the crime was actually committed. *Shuttlesworth v. Birmingham,* 373 U.S. 262, 265–66, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963); *United States v. Cleary,* 565 F.2d 43, 46 (2d Cir. 1977), *cert. denied,* 435 U.S. 913, 98 S.Ct. 1469, 55 L.Ed.2d 506 (1978); *United States v. Giordano,* 489 F.2d 327, 330 (2d Cir. 1973); *United States v. Deutsch,* 451 F.2d 98, 118–19 (2d Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972); *Giragosian v. United States,* 349 F.2d 166, 167 (1st Cir. 1965); *United States v. Cades,* 495 F.2d 1166, 1167 (3d Cir. 1974); *United States v. Shuford,* 454 F.2d 772, 779 (4th Cir. 1971).

The failure to prosecute or obtain a prior conviction of a principal, such as where he may have been granted immunity or pleaded to a lesser offense, does not preclude conviction of the aider and abettor, as long as the commission of the crime by a principal is proved. *See, e. g., United States v. Deutsch,* 451 F.2d 98, 118–19 (2d Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972); *United States v. Bryan,* 483 F.2d 88, 93–94 (3d Cir. 1973) (en banc); *United States v. Musgrave,* 483 F.2d 327, 332–33 (5th Cir. 1973); *United States v. Kelly,* 258 F. 392, 402 (6th Cir.), *cert. denied,* 249 U.S. 616, 39 S.Ct. 391, 63 L.Ed. 803 (1919); *Pigman v. United States,* 407 F.2d 237, 239, (8th Cir. 1969); *United States v. Azadian,* 436 F.2d 81, 82 (9th Cir. 1971); *United States v. Coppola,* 526 F.2d 764, 776 (10th Cir. 1975); *Gray v. United States,* 260 F.2d 483, 484 (D.C.Cir. 1958); cf. Model Penal Code, § 2.06(7). Indeed the Third Circuit has recently held that the prior acquittal of the principal in a separate trial does not bar conviction of the aider and abettor if the second jury finds that the principal committed the crime. *United States v. Standefer,* 610 F.2d 1076 (3d Cir. Aug. 12, 1979, Dkt. 78–1909) (en banc).

It is equally clear that under 18 U.S.C. § 2(b) one who *causes* another to commit a criminal act may be found guilty as a principal even though the agent who committed the act is innocent or acquitted. *United States v. Wiseman,* 445 F.2d 792, 794–95 (2d Cir. 1971); *United States v. Kelner,* 534 F.2d 1020, 1022 (2d Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976) ("It is a general principle of causation in criminal law that an individual (with the necessary intent) may be held liable if he is a cause in fact of the criminal violation, even though the result which the court condemns is achieved through the actions of innocent intermediaries"); *United States v. Ordner,* 554 F.2d 24, 29 (2d Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *United States v. Rapo-*

*port,* 545 F.2d 802, 806 (2d Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *United States v. Kelley,* 395 F.2d 727, 729 (2d Cir.), *cert. denied,* 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376 (1968); *United States v. Grasso,* 356 F.Supp. 814, 819 (E.D.Pa.), *affd.* 485 F.2d 682 (3d Cir. 1973); *United States v. Lester,* 363 F.2d 68, 72 (6th Cir. 1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967).

█ The guilt or innocence of the intermediary, therefore, becomes irrelevant in determining whether a person charged as a co-principal under § 2(b) may be found guilty. The rationale behind this rule was explained by the court in *United States v. Lester, supra,* 363 F.2d at 72:

> "This doctrine is an outgrowth of common law principles of criminal responsibility dating at least as far back as *Regina v. Saunders,* 2 Plowd. 473 (1575); and of principles of civil responsibility established, by force of the maxim *qui facit per alium facit per se,* at least as early as the 14th century. [See: *United States v. Gooding,* 25 U.S. (12 Wheat.) 460, 6 L.Ed. 693 (1827); Sayre, Criminal Responsibility for the Acts of Another, 43 *Harv.L. Rev.* 689 (1930)]."

█ Applying these principles here, the acquittal of Defreitas by the same jury which convicted Ruffin precludes a finding under 18 U.S.C. § 2(a) that Ruffin aided and abetted her commission of the alleged crime, since the jury's verdict amounts to a finding that she had not been proven beyond a reasonable doubt to have knowingly and wilfully committed it. Had Ruffin acted alone, without using Defreitas as an intermediary, he obviously could not have been found guilty of violating 42 U.S.C. § 2703, since he was never an "officer, director, agent or employee of, or connected in any capacity with, any agency receiving financial assistance," the only category of persons to whom the criminal sanction of § 2703 directly applies. However, the record in this case would permit an inference that Ruffin *caused* Defreitas, a person within this category, to engage in the alleged criminal conduct. The issue before us, therefore, narrows down to whether one who would be incapable of violating that law if he acted alone (i. e., Ruffin) may nevertheless be found guilty where he causes the prohibited conduct to be committed by another who has the capacity to violate it (in this case (Defreitas) but who has been acquitted. We are persuaded that such a "causer" may be found guilty under § 2(b).

One purpose of 18 U.S.C. § 2 is to enlarge the scope of criminal liability under existing substantive criminal laws so that a person who operates from behind the scenes may be convicted even though he is not expressly prohibited by the substantive statute from engaging in the acts made criminal by Congress. See S.Rep.No.1020, 82nd Cong., 1st Sess. [1951] U.S.Code Cong.Serv. p. 2583. Where the principal is found guilty of a criminal offense, for instance, it is undisputed that a person may be convicted as an aider and abettor under 18 U.S.C. § 2(a) even though he may lack the capacity to violate the substantive criminal statute. See, e. g., *United States v. Giordano, supra; Giragosian v. United States, supra.* We see no logical reason why a person who causes an innocent agent having the capacity to commit a criminal act to do so should not likewise be held criminally responsible under 18 U.S.C. § 2(b) even though the causer lacks the capacity.

Indeed Congress in 1951 amended 18 U.S.C. § 2(b) to insure that a person who manipulates another may not escape criminal responsibility because the manipulator lacks capacity. Prior to 1951 Title 18 U.S.C. § 2(b), as it had been enacted in 1948, read as follows:

> "(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

The House Report accompanying this 1948 provision explained that its purpose was (a) to permit the deletion from many criminal provisions of words such as "causes or procures" and (b) to remove any doubt that one who "causes the commission of an indis-

pensable element of the offense by an innocent agent or instrumentality, is guilty as a principal" in accord with such decisions as *United States v. Giles,* 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937); H.Rep.No.304, 80th Cong., 1st Sess. 2448–49 (1948). In *Giles* the Supreme Court affirmed the conviction of a bank teller for violating a statute prohibiting a national bank employee from making false entries in its books, holding that although he had not personally made any false entries he could nevertheless be found guilty on the basis of evidence that he had permitted such entries to be made by innocent intermediaries.

Despite *Giles* and the 1948 enactment of § 2(b) in its earlier form, some continued to argue that a person who causes someone with capacity to commit the crime (e. g., an officer or employee of a bank or government agency) to do so could not be held criminally liable unless he personally had the capacity to commit the offense. Congress, however, removed any doubt about such a person's criminal responsibility by adopting the Act of October 31, 1951, ch. 655, § 17b which, in part, amended, 18 U.S.C. § 2(b) to add the words "or another" so that it now reads:

> "(b) Whoever willfully causes an act to be done which if directly performed by him *or another* would be an offense against the United States, is punishable as a principal." (Emphasis added).

If there were any question about Congress' intent to enlarge the scope of 18 U.S.C. § 2 it was removed by the Senate Report accompanying the proposed amendment, which explained (1951 U.S.Code Cong.Serv. p. 2578).

> "This section is intended to clarify and make certain the intent to punish aiders and abettors *regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted.* Some criminal statutes of title 18 are limited in terms to officers and employees of the Government, judges, judicial officers, witnesses, officers or employees or persons connected with national banks or member banks.
>
> "Section 2(b) of title 18 is limited by the phrase, 'which if directly performed by him would be an offense against the United States,' to persons capable of committing the specific offense. Section 2(a) of such title, while not containing that language, is open to the inference that it also is limited in application to persons who could commit the substantive offense. If regarded as a definitive section, the section makes the aider and abettor a 'principal.' It has been argued that one who is not a bank officer or employee cannot be a principal offender in violation of section 656 or 657 of title 18 and that, therefore, persons not bank officers or employees cannot be prosecuted as principals under section 2(a).
>
> "Criminal statutes should be definite and certain." (Emphasis added).

The addition of the words "or another" is therefore significant for present purposes because they render criminally liable a person causing another to commit criminal acts where the other, even though innocent, has the capacity to do so and the defendant does not.[2] Prior to the 1951 amendment of § 2(b) it could be argued that in such a case the person causing the criminal act (in this case Ruffin) to be committed by such an innocent agent (in this case Defreitas) could not be punished as a principal for the reason that the act, "if directly performed by him," would not "be an offense against the United States" since he did not fit the description of those persons expressly covered by the substantive statute (i. e., he was not a director, officer or employee). As amended, however, the phrase "which if directly performed . .

2. Our dissenting colleague argues that the use of "aiders and abettors" in the Senate Report (and in the Government's indictment affidavit) indicates that reference is being made only to § 2(a), and that § 2(b) is not involved. In view of the context in each case, however, we conclude these are merely examples of what Judge Wyatt accurately describes as "the indiscriminate application of the term 'aider and abettor' to one against whom either Section 2(a) or 2(b) is invoked."

*by another* would be an offense against the United States" (emphasis added) covers the present case since the criminal act, if committed by "another" (i. e., Defreitas), would be such an offense, even though the other lacked the intent to commit the crime.

The foregoing construction is not only consistent with Congress' intent in broadening § 2(b) in 1951 but follows the interpretation we have given to that section in *United States v. Wiseman, supra.* There the defendants, *private* process servers, were charged under 18 U.S.C. § 2 with violation of 18 U.S.C. § 242, which prohibits state agents or employees (i. e., those acting "under color" of state law) from depriving citizens of their rights. The charge was based on the defendants' having caused the Clerk of the New York City Civil Court, a state employee, to enter judgments against third persons without his knowing that the judgments were fraudulently procured by the defendants' invalid service of process. In rejecting the defendants' contention that they could not be found guilty of violating the substantive statute because, not being state employees, they lacked the capacity to commit the crime, Judge Moore stated:

> "This contention is refuted by the reasoning of *United States v. Lester,* 363 F.2d 68 (6th Cir. 1966), *cert. denied,* 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967). Before 1951, § 2(b) read:
>
> " 'Whoever wilfully causes an act to be done which if directly performed *by him* would be an offense against the United States, is punishable as a principal.'
>
> "In 1951, this section was amended by adding 'or another' after 'by him' (see above). The phrase 'or another' includes the Clerk of the Civil Court. Thus if defendants 'wilfully caused' the Clerk to enter such judgments, defendants would be culpable to the same extent as the Clerk would be assuming [contrary to the record therein] the Clerk had the same knowledge as was possessed by defendants as to the falsity of the papers."

This reasoning applies with equal force to the present case.

Our decision in *Wiseman* was presaged by that of the Sixth Circuit in *United States v. Lester, supra,* wherein the convictions of persons causing police officers acting "under color" of law to violate 18 U.S.C. § 242 were upheld even though the officers were acquitted and the appellants lacked the capacity to act under color of law. After analyzing the effect of Congress' 1951 amendments of 18 U.S.C. § 2(b) the court stated:

> "It has been beyond controversy, then, at least since the 1951 amendment to 18 U.S.C. § 2(b), that the accused may be convicted as causer even though not legally capable of personally committing the act forbidden by a Federal statute, and even though the agent willfully caused to do the criminal act is himself guiltless of any crime." 363 F.2d at 73.

We have cited this decision with approval not only in *Wiseman, supra,* but in *Kelner, supra,* as well. Absent this sensible interpretation of § 2(b), as thus amended, we do not find any logical reason, nor has one been offered by appellant, for the addition of the words "or another" to that section in 1951. It is a cardinal principle of statutory interpretation that words inserted in a statute will be given their normal meaning and effect in the absence of a showing that some other meaning was intended. *United States v. Public Utilities Commission,* 345 U.S. 295, 315–16, 73 S.Ct. 706, 97 L.Ed. 1020 (1953); 2A Sutherland Statutory Construction § 46.07, at p. 65 (1973). Here no such showing has been made. Indeed it would be rather incongruous to hold that one lacking the capacity to commit a crime may be held criminally responsible as an "aider and abettor" under 18 U.S.C. § 2(a) but not as a "causer" under § 2(b). In both instances the person committing the criminal act may provide the necessary capacity, whether or not that person has the *mens rea.* In causing an innocent intermediary to commit a criminal act, the causer adopts not only the intermediary's act but his capacity. Moreover, if the causer were required to possess the capacity fixed by the substantive statute, the addition of the words "or another" to § 2(b) would be meaningless

surplusage, see *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955), since the language of the statute before the 1951 amendment would always have been sufficient to hold him criminally responsible for causing the commission by an innocent intermediary of an act "which if *directly performed by him* would be an offense against the United States." (Emphasis added).[3]

There remains the question of whether the conviction of Ruffin must, notwithstanding the foregoing analysis of § 2(b), be reversed on the ground urged by our esteemed colleague Judge Wyatt, namely, that the case was not submitted to the jury on legal principles that would permit a conviction of Ruffin under § 2(b). It is true that the jury was instructed primarily on the theory that Ruffin was charged under 18 U.S.C. § 2(a) as an aider and abettor of Defreitas' conduct. This instruction, of course, was appropriate for the reason that there was evidence from which the jury could infer that Defreitas as a principal violated 42 U.S.C. § 2703. The trial judge, apparently acting on his own, added to his instruction on aiding and abetting, "otherwise you must acquit." This, of course, was error, since there was evidence permitting a conviction of Ruffin as a "causer" under § 2(b), which was also charged to the jury.

We do not, however, believe that this error precluded a finding that Ruffin was guilty under § 2(b), since the Government may seek a conviction under § 2(a) or, in the alternative, under § 2(b), which was the case here. As our dissenting colleague notes, "There has been much confusion . . . because of the indiscriminate application of the term 'aider and abettor' to one against whom either Section 2(a) or Section 2(b) is invoked." Since the addition of the words "otherwise you must acquit" was an error in favor of Ruffin, he was not prejudiced by the jury's disregarding it after being properly instructed by the court, in response to its note, that it was "possible to find one defendant guilty of Counts 2, 3 and 4 [the substantive counts] and not find the other defendant guilty of those counts." The jury had already been properly instructed in the language of § 2(b) that "Whoever wilfully causes an act to be done, which if directly performed by him or another would be an offense against the United States, is punishable as a principal." Thus the jury was armed with a correct statement of the applicable legal principles,[4] and after an exhaustive review of pertinent authorities on the subject, including *Wiseman* and *Lester,* the court was satisfied that § 2(b) permitted a conviction of Ruffin, even though Defreitas might be acquitted.

The evidence, moreover, justifies the conclusion that the jury properly applied § 2(b) to the evidence and that there was no inconsistency in its acquittal of Defreitas and its conviction of Ruffin. Concededly the proof against Defreitas, at least on paper, appears to have been strong, warranting a conviction of her. On the other hand, there was evidence indicating that she may have been dominated or manipulated by her close friend Ruffin, that the fraudulent plan was his idea rather than hers, that he may have known more than she did about the lack of any real prospect for the renovation of the 1402 Bedford Avenue building, and that he received and personally retained most of the fraudulently obtained rentals totalling some $115,000 under the leases. This evidence would permit the jury to have concluded that Ruffin was guilty beyond rea-

3. Judge Wyatt suggests that the words "or another" were added to § 2(b) in order to make it clear that § 2*(a)* does not require that the aider and abettor have the capacity to commit the crime as principal. We find it difficult to believe that Congress would take such a circuitous route to achieve that goal. Rather, we read the legislative history to indicate that Congress meant to make it clear that neither 2(a) nor 2(b) included a capacity requirement as to the "aider and abettor" or "causer."

4. Although a more detailed instruction regarding the differentiation between aiding and abetting under § 2(a) and causing under § 2(b) might have been helpful, there was also the risk that it could serve to mislead or confuse the jury since the jury's note did not indicate which defendant might be convicted and which acquitted.

sonable doubt but that Defreitas lacked the necessary criminal intent.

We find no merit in any of the other contentions urged by Ruffin. The court properly charged all of the essential elements which the Government was required to prove in order to establish a violation of 42 U.S.C. § 2703, including intent. There was ample evidence to permit the jury to conclude that Ruffin did not intend to renovate the 1402 Bedford Avenue building, since he knew it was unoccupied and would be unoccupiable during the life of the leases. There was also evidence that the monies which Ruffin obtained by fraud were the subject of contracts or grants of assistance pursuant to the Economic Opportunity Act of 1964, as amended.

The judgment of conviction is affirmed.

WYATT, District Judge (dissenting):

Respectfully and with regret, I dissent from the decision expressed in Judge Mansfield's thoughtful opinion. The evidence is more than sufficient to show that Ruffin committed a big fraud and that he should be punished. I do not believe, however, that he can properly be punished in a federal court by conviction for a violation as a principal of 42 U.S.C. § 2971f(a) (formerly 42 U.S.C. § 2703), limited as that section is to those "connected in any capacity" with an agency receiving financial assistance under the Economic Opportunity Act of 1964. Admittedly, Ruffin was not so "connected."

The basic disagreement between the majority and me is on the conclusion by the majority that the 1951 amendment to 18 U.S.C. § 2(b) made "criminally liable a person causing another to commit criminal acts where the other, even though innocent, has the capacity to do so and the defendant does not." There is other disagreement to be noted, but it is less important.

1.

Before considering the effect of the 1951 amendment to 18 U.S.C. § 2(b), it is important to understand the theory of the indictment as to Ruffin and the theory of the government in prosecuting him, up to the arrival of a note from the jury during its deliberations.

Section 2 of Title 18, United States Code, reads, and since 1951 has read, as follows:

> § 2. Principals
>
> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

It must be noted that neither 18 U.S.C. § 2(a) nor § 2(b) defines an offense. No one can be prosecuted under Section 2(a) or Section 2(b) alone.

> 18 U.S.C. § 2 does not define a crime; rather it makes punishable as a principal one who aids and abets the commission of a substantive crime. There can be no violation of 18 U.S.C. § 2 alone; an indictment under that section must be accompanied by an indictment for a substantive offense.

*United States v. Campbell*, 426 F.2d 547, 553 (2d Cir. 1970); approved and followed on this point in *United States v. Erb*, 543 F.2d 438, 446 (2d Cir.), *cert. denied*, 429 U.S. 981, 97 S.Ct. 493, 50 L.Ed.2d 590 (1976). I agree with Judge Mansfield that Section 2(b) applies to a very different situation than Section 2(a). Section 2(b) applies where a person is charged with the commission of an offense as a principal through the use of an innocent intermediary to do some of the acts essential to the offense. Judge Mansfield properly refers to such a person as a "causer". Section 2(a) applies where a person is charged as an accessory before the fact by aiding and abetting the commission of an offense by another as the principal. Judge Mansfield refers to such a person as an "aider and abettor" and properly limits that term to those so charged under Section 2(a). There has been much confusion in judicial opinions and elsewhere because of the indiscriminate application of the term "aider and abettor" to one against whom

either Section 2(a) or Section 2(b) is invoked.

The indictment by its words alone does not indicate whether the charges against Ruffin are based on Section 2(a) or Section 2(b). DeFreitas and Ruffin are charged as principals in the substantive counts and the citation is to 42 U.S.C. § 2703 and simply to "Title 18, United States Code, Section 2". However, the mere fact that DeFreitas, an employee of an Economic Opportunity Act agency, is charged with the same offenses as Ruffin, not such an employee, itself demonstrated that the government was relying on Section 2(a) and not Section 2(b). It was not the theory of the government nor of the indictment that DeFreitas was an innocent intermediary caused by Ruffin to do something. It was the theory of the government and consistent with the indictment that DeFreitas was guilty of a violation of the substantive statute and that Ruffin had aided and abetted her in the commission of the substantive offense.

That the reliance of the government was on aiding and abetting under Section 2(a) and not on causing under Section 2(b) was further made clear shortly after the return of the superseding indictment when an affidavit was filed by the United States Attorney's office. The affidavit was in opposition to a motion for Ruffin to dismiss the indictment because he, not an employee of the relevant agency, did not have the capacity to commit the offense. The affidavit recited, among other things (emphasis supplied):

> "Since the defendant RUFFIN is charged as one who *aided and abetted another* in the commission of a crime, he is punishable as a principal. . . . Furthermore, an aider and abettor may be charged as a principal and the words 'aid and abet' do not have to appear in the indictment."

The aiding and abetting language of the affidavit can only be read as a reference to Section 2(a); it could not refer to Section 2(b).

The government requested a charge which made it further clear that the government was relying on the aiding and abetting language of Section 2(a) and not on the causing language of Section 2(b). The request was as follows (emphasis supplied):

> *Aiding and Abetting*
>
> It is not necessary for the Government to show that a defendant physically committed the crime himself. The law provides that a person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself. Accordingly, you may find the defendant William Ruffin guilty of the offenses charged in Counts Two, Three, Four and Five *if you find beyond a reasonable doubt that the defendant Olga DeFreitas committed the offenses with which they were charged* in those counts and that the defendant William Ruffin aided and abetted her.
>
> To determine whether the defendant William Ruffin aided and abetted the commission of the offenses charged in Counts Two, Three, Four and Five, ask yourselves these questions: Did he participate in it as something he wished to bring about? Did he associate himself with the venture? Did he seek by his action to make it succeed? If he did, then he is an aider and abettor, and therefore guilty. [Citing cases.]
>
> A defendant may be convicted as an aider and abettor even though the person charged as principal is acquitted. *United States v. Lugo-Baez,* 412 F.2d 435, 440 (8th Cir. 1969).

Judge Mansfield believes that this request did not "suggest that Ruffin's guilt was dependent on DeFreitas's guilt". I cannot agree. The request is for an instruction that the jury may find Ruffin guilty *if* it finds that DeFreitas committed the offenses. True, at the end of the requested charge an inconsistent instruction is requested, namely, that "an aider and abettor" can be convicted "even though the person charged as principal is acquitted". In my view this was in the first instance properly treated by the trial judge as a

gross mistake of law on the part of the government, as Judge Mansfield recognizes elsewhere in his opinion when he correctly points out that Ruffin could not be found guilty as an "aider" and "abettor" under Section 2(a) unless DeFreitas were found guilty as a principal.

In respect of the necessity for finding DeFreitas guilty before Ruffin could be found guilty, the trial judge later instructed the jury word for word as in part requested by the government, adding the sentence: "Otherwise, you must acquit [Ruffin]." This addition did not change the sense of what the government had in part requested and, as the majority opinion elsewhere recognizes, was in any event correct in principle.

The government made no request for any charge of any sort under Section 2(b) about causing an act to be done by DeFreitas as an innocent intermediary. This is not surprising because the government was then urging to Court and jury that DeFreitas was a guilty principal and as such had been aided and abetted by Ruffin.

The trial judge gave counsel, before their summations, a copy of his proposed charge (SM 1322; "SM" references are to pages of the stenographic minutes). The proposed charge and the requests to charge were discussed between Court and counsel (SM 1322–26, 1337, 1352–81). The part of the charge dealing with aiding and abetting was specifically so discussed (SM 1362–64) and no change was made by the Court in the proposed charge in this respect, which as to the necessity for finding DeFreitas guilty before the jury could find Ruffin guilty was as follows:

> Accordingly, you may find the defendant William Ruffin guilty of the offenses charged in Counts Two, Three and Four if you find beyond a reasonable doubt that the defendant Olga DeFreitas committed the offenses with which they were charged in those counts and that the defendant William Ruffin aided and abetted her. Otherwise, you must acquit.

During the discussion of this part of the proposed charge, the government made no request for any change in this or any other part of the proposed charge. Indeed, the government had a little earlier advised the Court (SM 1337; emphasis supplied):

> "The charges given to the government to read are acceptable the way they are stated. *It states the government's position.*"

There should have been no surprise to the government in the proposed charge that DeFreitas must be found guilty before Ruffin could be found guilty. As the trial judge later pointed out to counsel for the government (SM 1551): "You gave it to me. I included your charge."

The jury was instructed by the trial court on the law. As to aiding and abetting, Section 2 was read in its entirety, including Section 2(b), but nothing was said about any theory that Ruffin could be found guilty if DeFreitas was acquitted because she, as an innocent intermediary, had been caused to act by Ruffin. Instead, the trial court instructed the jury to the contrary (SM 1519–20):

> Accordingly, you may find the defendant William Ruffin guilty of the offenses charged in Counts Two, Three and Four if you find beyond a reasonable doubt that the defendant Olga DeFreitas committed the offenses with which they were charged in those counts and that the defendant William Ruffin aided and abetted her. Otherwise, you must acquit.

The government took no exception to this, or to any other part of the charge.

The charge to the jury was completed late in the afternoon. There was a recess for dinner, after which the jury began deliberating. During that evening the trial judge received a note from the jury reading in relevant part as follows: "For counts 2, 3 and 4, is it possible to find one defendant guilty and the other not guilty." Without any consultation with counsel (SM 1535), the trial judge prepared a reply to the jury reading as follows: "It is possible to find one defendant guilty of counts 2, 3 and 4 and not find the other defendant guilty of those counts." To the extent that the proposed reply permitted a finding of not

guilty as to DeFreitas on counts 2, 3 and 4, and a finding of guilty as to Ruffin on those counts, it is diametrically opposite to the instructions given only a short time earlier and before the jury began to deliberate. Disagreeing with the majority, I believe the proposed reply was incorrect in this aspect. To the extent that the proposed reply permitted a finding of guilty as to DeFreitas on counts 2, 3 and 4, and a finding of not guilty as to Ruffin on those counts, it is correct and is not inconsistent with the Court's earlier charge.

The proposed reply was shown to counsel and immediately counsel for Ruffin objected, pointing out that the proposed reply was contrary to the charge, that Ruffin could not be convicted as a principal under 42 U.S.C. § 2703 because he was not connected with the agency, and that he could only be found guilty as an aider and abettor of DeFreitas if she were found to be the guilty principal. All concerned—the trial court, counsel for the government and counsel for DeFreitas (as well as counsel for Ruffin)—evidently believed (with no more than speculation to go on) that the jury was inclined to find DeFreitas not guilty. The government, hoping to secure a verdict at least against Ruffin, for that reason reversed its position and adopted the theory of the proposed reply, that Ruffin could be found guilty even though DeFreitas were acquitted. There was long colloquy about the proposed reply (SM 1535–1590). The government attempted to uphold the proposed reply by shifting its theory from Section 2(a) to Section 2(b). Counsel for Ruffin objected. The trial court wavered and at one point (SM 1551) had the following exchange with government counsel (Mr. Silverman):

> THE COURT: I am saying that in order to find Ruffin having abetted, they must find that he aided and abetted Miss DeFreitas as a director; that she is guilty of the offense. If she is not guilty of the offense, they can't find him guilty of the offense. The charge says that.
>
> MR. SILVERMAN: I believe that's incorrect.
>
> THE COURT: You gave it to me. I included your charge.

In the end, however, the trial court sent to the jury the reply as first proposed, which read as follows (SM 1590):

> It is possible to find one defendant guilty of counts 2, 3 and 4 and not find the other defendant guilty of those counts.

2.

As further background to a consideration of 18 U.S.C. § 2, it is useful to examine the common law respecting parties to a felony. Statutes have largely abrogated the common law of parties to crime and there are no federal common law crimes; there is no federal common law of crimes. Wright, Law of Federal Courts 79 (3d Ed. 1976). However, the relevant statutes in this field, both state and federal, frequently use common law terminology. Section 2 of Title 18, for example, is entitled "principals".

The parties to a felony at common law were classified: principals in the first degree, principals in the second degree, accessories before the fact, and accessories after the fact. An accessory after the fact was one who, after a felony had been completed, harbored the principal in the first degree or otherwise helped him to escape punishment. For present purposes, this category may be disregarded.

A principal in the first degree was a criminal actor who committed the offense. There might be more than one principal in the first degree but there had always to be *at least one principal in the first degree* for an offense to have been committed. Lafave & Scott, Criminal Law 497 (1972), hereafter "Lafave".

A principal in the second degree was one who was present at the commission of a criminal offense and who aided and abetted the principal in the first degree in the commission of that offense.

An accessory before the fact was one who aided and abetted the principal in the first degree in the commission of the criminal offense but who was *not* present at the commission of the offense.

One who used a *guilty* intermediary to commit a crime was not a principal in the

first degree; he was either a principal in the second degree or an accessory before the fact. Lafave 496. On the other hand, one who used an *innocent* intermediary to engage in criminal conduct was a principal in the first degree. Lafave 496–7; 1 Wharton's Criminal Law 160–62 (14th ed. 1978). This was early recognized by the Supreme Court, which declared through Mr. Justice Story in 1827 (*United States v. Gooding*, 12 Wheat. 460, 25 U.S. 460, 469, 6 L.Ed. 693; emphasis supplied):

> "On the contrary, it is the known and familiar principle of criminal jurisprudence, that he who commands, or procures a crime to be done, if it be done, is guilty of the crime, and the act is his act. This is so true, that even the agent may be innocent, when the procurer or *principal* may be convicted of guilt, as in the case of infants or idiots employed to administer poison."

3.

Before 1909 there was no general federal statute authorizing the prosecution of accessories; there were scattered provisions as to specific substantive offenses which so authorized. For example, the predecessor of what is now 18 U.S.C. § 656—theft by national bank officers—provided that any officer, clerk or agent of a national bank who embezzles, etc. its moneys, with intent to defraud, and "every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section" should be guilty of an offense. Under this statute, the Supreme Court held, long before 1909, that any person, whether or not an officer, clerk or agent of a national bank, could properly be convicted under the section for aiding and abetting a *guilty principal* who *was* an officer, clerk, or agent of a national bank. This was consistent with the common law rule that there had to be at least one principal in the first degree, by definition capable of committing the offense, but where there was such a one, another who was not an officer, clerk, or agent, and thus incapable of committing the offense as a principal, could nevertheless be an aider and abettor and punishable as such. The Supreme Court declared (*Coffin v. United States*, 162 U.S. 664, 669–70, 16 S.Ct. 943, 946, 40 L.Ed. 1109 (1896)):

> The primary object of the statute was to protect the bank from the acts of its own servants. As between officers and agents of the bank and third persons co-operating to defraud the bank, the statute contemplates that a bank officer shall be treated as a principal offender. In every criminal offence there must, of course, be a principal, and it follows that without the concurring act of an officer or agent of a bank, third persons cannot commit a violation of the provisions of section 5209. If, therefore, a violation of the statute in question is committed by an officer and an outsider the one must be prosecuted as the principal and the other as the aider and abettor.

In 1909 Congress determined to provide a means to prosecute aiders and abettors of *any* federal crime. The Act of March 4, 1909, ch. 321, § 332, 35 Stat. 1152, was in relevant part as follows:

> Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

This, with some changes, is what is now 18 U.S.C. § 2(a).

Why Congress added the 1909 provision was explained at the time (S.Rep.No. 10, pt. 1, 60th Cong., 1st Sess. 27 (1908)):

> The committee has deemed it wise to make those who are accessories before the fact at common law principal offenders, thereby permitting their indictment and conviction for a substantive offense.

After the 1909 provision, now 18 U.S.C. § 2(a), it was possible to prosecute anyone as an aider and abettor of any substantive offense; it was no longer necessary to have aiding and abetting provisions in statutes defining particular substantive offenses. It was still necessary to have a guilty principal (in the first degree at common law) before there could be a guilty aider and abettor—one who at common law would have been a

principal in the second degree or an accessory before the fact.

In 1948 Congress made a general revision of the federal criminal laws and in that connection wished to eliminate the words "cause" or "procure" from many sections being revised. This was done by adding a general "causing" provision to 18 U.S.C. § 2, which provision, with some changes, is now Section 2(b). As passed by Congress in 1948 (62 Stat. 684), Section 2 read as follows:

> § 2. Principals
>
> (a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal.
>
> (b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such.

The purpose of the addition of Section 2(b) was thus expressed in the House Report (H.Rep.No. 304, 80th Cong., 1st Sess. 2448–49 (1948)):

> Section 2(b) is added to permit the deletion from many sections throughout the revision of such phrases as "causes or procures".
>
> The section as revised makes clear the legislative intent to punish as a principal not only one who directly commits an offense and one who "aids, abets, counsels, commands, induces or procures" another to commit an offense, but also anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States.
>
> It removes all doubt that one who puts in motion or assists in the illegal enterprise but causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense.
>
> This accords with the following decisions: *Rothenburg v. United States*, 1918, 245 U.S. 480, 38 S.Ct. 18, 62 L.Ed. 414, and *United States v. Hodorowicz*, C.C.A. Ill.1939, 105 F.2d 218, certiorari denied, 308 U.S. 584, 60 S.Ct. 108, 84 L.Ed. 489. *United States v. Giles*, 1937, 340 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493, rehearing denied, 300 U.S. 687, 57 S.Ct. 505, 81 L.Ed. 888.

There was thus no intention by Section 2(b) to change what had been the law theretofore. If a person uses an innocent intermediary to commit a crime, that person is guilty not as an aider and abettor but as a principal in the first degree. If, however, the offense is one which can only be committed by a specified class of persons—bank employees under 18 U.S.C. § 656, for example—a defendant who uses an innocent intermediary can be prosecuted only if he or she is a member of the specified class. *United States v. Giles*, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937), is a good example of the use of an innocent intermediary. A statute made it an offense for an employee of a national bank to make a false entry in its books. Giles was such an employee and was indicted for having made a false entry; he was indicted as a principal. The evidence showed that Giles was a teller who received deposits but held back the records thereof from the bookkeepers, thereby causing the entries by them in the relevant books to be false. Giles argued that he could not be guilty because "[p]ersonally he made no such entry; he did not affirmatively direct one" (300 U.S. at 48, 57 S.Ct. at 344). The Supreme Court held that the evidence established his guilt because the substantive statute was "broad enough to include deliberate action from which a false entry by an innocent intermediary necessarily follows." 300 U.S. at 49, 57 S.Ct. at 344. *Giles, however, was a bank employee*; he could not otherwise have been prosecuted.

As part of a bill in 1951 making amendments to many sections of the United States Code, amendments described in the Senate Report as "of a minor character", Congress amended 18 U.S.C. § 2. The purpose of the bill was explained in the Senate Report as follows (S.Rep.No. 1020, 82d Cong. 1st Sess. reprinted in U.S.Code Cong. & Admin.News, p. 2578):

The purpose of the proposed legislation, as amended, is to make a few improvements of a minor character in certain titles of the United States Code, which titles have been previously enacted into law, in the interest of clarity, uniformity, and accuracy, and to incorporate in some of these titles, where they properly belong, the provisions of separate legislation and of Reorganization Plans which affect such titles.

The bill was Pub.L.No. 82–248 and as first passed by the House contained nothing to affect 18 U.S.C. § 2. The amendment to Section 2 was added in the Senate. When the bill with changes by the Senate was returned to the House, an inquiry was made and answered on the floor of the House, as follows (97 Cong.Rec. 13748 (1951)):

MR. REED of Illinois. Mr. Speaker, reserving the right to object, am I correct in understanding that this bill is merely clarifying and corrective as to certain titles of the code, and that in only one instance is there any substantive law involved, and that is, as I recall, where an appeal is permitted from the District Court of Guam to the Ninth Circuit? Also that it has the approval of the Judicial Conference?

MR. BRYSON. That is true.

It was only after this assurance that the House concurred in the Senate amendments. (What had been approved by the Judicial Conference was only appeal from Guam to the Ninth Circuit; see Report of the Judicial Conference, Sept. 24–26, 1951, p. 34.)

The 1951 amendment to 18 U.S.C. § 2, contained in Section 17B of the bill, caused it to read in its present form, as follows:

§ 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

It will be noted that the former words "is a principal" in Section 2(a) are replaced by "is punishable as a principal", that the former words in Section 2(b) "is also a principal and punishable as such" are replaced by "is punishable as a principal", that the word "willfully" has been added to Section 2(b), and that the words "directly by him" in Section 2(b) are replaced by "directly by him or another". The Senate Report (1951 U.S.Code Cong. & Admin.News, p. 2578) explains:

SECTION 17B OF BILL

This section is intended to clarify and make certain the intent to punish aiders and abettors regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted. Some criminal statutes of title 18 are limited in terms to officers and employees of the Government, judges, judicial officers, witnesses, officers or employees or persons connected with national banks or member banks.

Section 2(b) of title 18 is limited by the phrase, "which if directly performed by him would be an offense against the United States," to persons capable of committing the specific offense. Section 2(a) of such title, while not containing that language, is open to the inference that it also is limited in application to persons who could commit the substantive offense. If regarded as a definitive section, the section makes the aider and abettor a "principal." It has been argued that one who is not a bank officer or employee cannot be a principal offender in violations of section 656 or 657 of title 18 and that, therefore, persons not bank officers or employees cannot be prosecuted as principals under section 2(a).

Criminal statutes should be definite and certain.

While far from a model of clarity, this explanation, as I read it, is that the 1951 amendments to 18 U.S.C. § 2 are not intended to affect Section 2(b) but are directed to Section 2(a) only, to "aiders and abet-

tors" reachable under Section 2(a) but not described by the language of Section 2(b). The expression in the explanation, "aiders and abettors," cannot refer to persons to whom Section 2(b) is applicable; these are "causers", to use Judge Mansfield's accurate description. "Aiders and abettors" are those to whom Section 2(a) is applicable. It is *they* who are said to have argued in the bank officer cases that they cannot be prosecuted "under Section 2(*a*)" (emphasis supplied) because they are not bank officers. For example, such an argument was made in *Haggerty v. United States*, 5 F.2d 224 (7th Cir. 1925), before Section 2(b) was enacted, where an indictment charged a federal officer under the pre-1951 version of what is now Section 2(a) with aiding and abetting others (not federal officers) falsely to impersonate federal officers. This conviction was affirmed. The argument, rejected by the Court, was referred to as follows (5 F.2d at 225): "But it is pointed out that . . . notwithstanding the indictment and proofs may show his participation to have been that of aider or abettor, he became in law, by virtue of the statute, a principal, and being in fact an officer, cannot as a principal be convicted under an indictment predicated on false assumption of official character." The 1951 amendments eliminate from Section 2(a) the old words "is a principal" because it was so argued in such cases. The Senate Report explanation in this respect seems very clear: "It has been argued that one who is not a bank officer or employee cannot be a principal offender in violations of section 656 or 657 of title 18 and that, *therefore*, persons not bank officers or employees cannot be prosecuted as principals under section 2(*a*)" (emphasis supplied). The 1951 amendments were therefore intended to meet this argument "under Section 2(a)" by, among other things, substituting "is punishable as a principal" for the old words "is a principal".

Even after the 1951 amendments, aiders and abettors under Section 2(a) continued to make the same old argument where prosecution was for any offense limited to specified classes of persons. In rejecting this argument, the 1951 amendments have been recognized by the Courts as directed to Section 2(a) rather than to Section 2(b). A good example is found in the recent Third Circuit opinion cited by Judge Mansfield, namely, *United States v. Standefer*. The purpose of the 1951 amendments is there discussed in relevant part as follows (emphasis supplied):

> A second concern that has been expressed is that the substantive criminal statute under which Standefer was indicted, 26 U.S.C. § 7214(a)(2), is limited in its coverage to officers and employees of the United States. Standefer, a private citizen, notes that the government employed 18 U.S.C. § 2(a) to prosecute him as an aider and abettor, when he could not have been indicted as a principal for the substantive crime. He questions whether Congress anticipated that a statute that ostensibly does no more than alter a prior system of classification would be used to expand the reach of other substantive criminal statutes that are confined to certain classes of defendants by their terms. . . .
>
> This point might be somewhat convincing were it not for the 1951 amendment of the Act. But apparently the very question Standefer raised in this regard had arisen prior to 1951, because the Congress, in Section 17B of the Act of October 31, 1951, altered the language of the statute by replacing "is a principal" with "is punishable as a principal." The change was not designed to be purely formal, for Congress expressed its purpose quite clearly:
>
>> This section is intended to clarify and make certain the intent to punish aiders and abettors regardless of the fact that they may be incapable of committing the specific violation which they are charged to have aided and abetted. Some criminal statutes of title 18 are limited in terms to officers and employees of the Government, judges, judicial officers, witnesses, officers or employees or persons connected with national banks or member banks.

> In light of this unambiguous statement by Congress that 18 U.S.C. § 2(*a*) may be used to reach one who could not be indicted as a principal, Standefer, despite his private status, may not be heard to challenge his conviction on this ground. Section 7214(a)(2) is made applicable to Standefer through 18 U.S.C. § 2(a), and he must therefore be judged, in the circumstances of this case, as though he were a principal capable of violating that statute.

While Standefer could thus be prosecuted as an aider and abettor although he had no capacity to commit the offense as principal, the Court recognized that, after the 1951 amendment, it was still essential for the government to show that *someone* committed the offense as principal:

> Most, if not all, of the cases urged by Standefer on this point in fact stand for little more than the abiding requirement that the government must prove every element of its case in order to sustain a conviction. This is true of any criminal prosecution, but it has been a particularly notable factor in the reversal of several convictions of aiders and abettors when the government has been unable to establish adequately the commission of the criminal act by the principal. 18 U.S.C. § 2 has not altered the rule that in order to convict an aider and abettor, the government must first demonstrate that a crime has been committed.

There were, of course, some changes in 1951 to Section 2(b) as well as to Section 2(a). As I read the Senate explanation, however, the changes made to Section 2(b) —including the addition of the words "or another"—were solely to avoid in the interpretation of Section 2(a) any inference from the wording of Section 2(b).

The only reference in the Senate explanation to Section 2(b) is the sentence: "Section 2(b) of title 18 is limited by the phrase 'which if directly performed by him would be an offense against the United States' to persons capable of committing the specific offense." There is no indication in this sentence that Congress meant *to remove the limitation.* Section 2(b) deals with the use by a principal of an *innocent* intermediary; the causer under Section 2(b) is thus the only possible principal; a principal necessarily must be a person having capacity to commit the offense; without such a person there can be no principal; and, according to long established doctrines, without at least one principal no offense is committed under the substantive criminal statute. If the 1951 amendment to Section 2(b) nevertheless authorizes the conviction of a causer under Section 2(b) who lacks capacity to commit the substantive offense, this would represent a *major* change in Section 2(b) and in the many federal criminal statutes which are limited in application to specified classes of persons. In the light of the legislative history, I cannot believe that by the 1951 amendments Congress meant to make such a major change. Such a change would scarcely have been described in the Senate Report as "of a minor character" nor could it have been said not to involve "any substantive law", as was said on the floor of the House. That Congress added the words "or another" to Section 2(b) is, in light of the legislative history, baffling in the extreme, but I cannot accept that Congress meant thereby to make such a far-reaching and radical alteration as is found by the majority.

4.

This dissent is on a narrow but important issue.

Ruffin is not connected in any way with any agency receiving federal anti-poverty funds. He therefore cannot violate 42 U.S.C. § 2703 as a principal and, as the majority agrees, he could not have been prosecuted under that section had he acted alone. If, however, as the jury verdict indicates, he acted through an innocent intermediary (DeFreitas), the majority believes his conviction can be sustained because of the 1951 amendment to Section 2(b). I am unable to agree to this.

Read literally, it is possible to give Section 2(b) as amended the interpretation of the majority. But, in my view, this is to "stick too closely to the letter" and fails to

read the 1951 amendment "in the light of the mischief to be corrected" by that amendment. *Warner v. Goltra,* 293 U.S. 155, 158–59, 55 S.Ct. 46, 48, 79 L.Ed. 254 (1934). That "mischief" had nothing to do with Section 2(b), nor with causers using innocent intermediaries. The "mischief", as the Senate Report explains, was the continued argument by aiders and abettors under Section 2(a) that they could not be prosecuted unless they had the capacity to violate the substantive offense statute as principals.

It seems entirely clear to me that a person who lacks the capacity to commit a substantive offense may be prosecuted as an "aider and abettor" under Section 2(a) if there is proof that a principal who did have the capacity was guilty of the offense. At the same time, a person who lacks the capacity to commit a substantive offense may not be prosecuted as a causer under Section 2(b) using an innocent intermediary who does have the capacity. This is not so "incongruous" as the majority thinks. On the contrary, it is the reasonable and logical consequence of settled rules of criminal law, deriving from the classification at common law of parties to crimes and the reasons for that classification.

Before there can be any conviction for any felony offense, there must be at least one guilty principal in the first degree. Where the substantive offense is limited to a specified class—agency employees in the case at bar, bank officers, etc. in 18 U.S.C. § 656 and the like—and an outsider is indicted as an aider and abettor under 18 U.S.C. § 2(a), it is essential for the government to prove that the offense was committed by a principal who, by definition, had the capacity to be such. This was explained in *United States v. Giordano,* 489 F.2d 327, 330 (2d Cir. 1973):

> Cases in which customers of a bank are charged with aiding and abetting a bank officer willfully to misapply money or credit of the bank, 18 U.S.C. § 656, are generally troublesome. . . .
>
> The depositor, not being "connected in any capacity" with the bank cannot be guilty of violating 18 U.S.C. § 656 as a principal.
>
> . . . . .
>
> He can, however, be charged as an accessory under 18 U.S.C. § 2. He may not be convicted as an accessory, however, unless the bank officer, as a principal is himself guilty of violating Section 656.

Where the substantive offense is limited to a specified class, and the causer is not a member of the class, but the innocent intermediary is a member of the class, there can be no conviction of the causer as a principal, by the use of Section 2(b) together with the substantive statute. The causer cannot be a principal because of lack of capacity. The intermediary cannot be a principal because, though possessing capacity, he or she is innocent. Without a principal there can be no violation of the substantive statute.

The conviction of an aider and abettor (Section 2(a)) who lacked capacity to commit the substantive offense has been set aside many times since 1951 where the government failed to prove the commission of the offense by the principal. Examples are *United States v. Cleary,* 565 F.2d 43 (2d Cir. 1977), *cert. denied,* 435 U.S. 915, 98 S.Ct. 1469, 55 L.Ed.2d 506 (1978); *United States v. Shuford,* 454 F.2d 772 (4th Cir. 1971); *Giragosian v. United States,* 349 F.2d 166 (1st Cir. 1965). No one of the judges or prosecutors in these numerous other cases has ever attempted to uphold the conviction of the aider and abettor on a causer-innocent intermediary concept under Section 2(b) or ever even referred to the possibility of doing so. The convictions have simply been overturned despite the same possibility of upholding the convictions as the majority finds here. This is difficult to explain except on the ground that all concerned in the other cases believed that the aider and abettor, lacking capacity, could not be a principal under Section 2(b) as would be required for the commission of an offense.

Moreover, this Court has often approved a jury charge that before a defendant can be found guilty of aiding and abetting, a

principal must be found guilty of the substantive offense. An example within recent weeks is *United States v. Gregg,* 612 F.2d 43, at 46 (2d Cir. 1979), where Judge Timbers stated:

> Under 18 U.S.C. § 660 (1976), in order for a person to be charged as a *principal,* he must hold the position of president, director, officer, or manager of a carrier engaged in interstate commerce. . . . The district court properly instructed the jury that, before they could find defendants guilty of aiding and abetting, at least one of the officials at REA—Bates, Maixner, or Jakubowsky—must be found guilty of the underlying offense.

As I understand the majority opinion, however, such a charge ought not to be approved; the charge is inadequate and improper because it does not explain to the jury the possibility of convicting the outsider under the majority opinion theory of causer-innocent intermediary based on Section 2(b). Yet this Court, except in the case at bar, has always approved the charge.

*United States v. Wiseman,* cited by the majority, does in some of its language lend support for the majority position. But in fact the Court in *Wiseman* did find that the causers, private process servers, had capacity to act "under color of" state law by reason of a "second branch of the public function theory" (445 F.2d at 796).

Some of the language in the opinion in *United States v. Lester,* also cited by the majority, does indicate that Section 2(b) can be used as the majority is doing here. But in *Lester* the question did not arise under a substantive criminal statute; the conviction on appeal was for conspiracy in violation of 18 U.S.C. § 371. Moreover there was a strong and well reasoned dissent.

The other decisions cited by the majority do not appear to be in point, either because the causer did have the special capacity to commit the substantive offense (as in *United States v. Kelley*; "engaged in the business of betting . . .", 18 U.S.C. § 1084(a)), or had the capacity because anyone could violate the substantive statute (as in *United States v. Kelner*; "whoever transmits . . .", 18 U.S.C. § 875(c)).

Not only does the conclusion of the majority seem to be contrary to reason, precedent, and legislative history, but the result of the majority decision seems contrary to all logic. Had Ruffin acted alone and had simply on his own stolen currency from the anti-poverty agency, admittedly he could not be found guilty of a violation of 42 U.S.C.. § 2703 inasmuch as he was not "connected" with the agency. But because he used DeFreitas (who was "connected") as an innocent intermediary in a fraud, he is said by the majority to be guilty of a violation of 42 U.S.C. § 2703. It is said that he "adopts" the capacity of DeFreitas. I cannot accept this notion.

5.

The other areas of disagreement may be briefly noted in order not to extend this already too long opinion.

The jury was not properly instructed, whatever view be taken of the necessity for finding that DeFreitas committed the offense. The jury was given diametrically opposed instructions on this point. As part of the Court's charge, the jury was told that DeFreitas must be convicted in order to convict Ruffin. In answer to the jury's note while deliberating, the reply was that the jury could convict one defendant without convicting the other. To compound the error, the jury was never told that the first instruction was mistaken and that the mistake was being corrected, nor was any explanation made as to why the second instruction in time was correct. There was no reference to an innocent intermediary, nor to the concept of causing. The jury could only have been confused and a guilty verdict after such confusing and inconsistent instructions ought not to be upheld.

6.

The conviction is being upheld because Ruffin, within the meaning of 18 U.S.C. § 2(b), caused an act to be done which if directly performed by him or another would be a violation of 42 U.S.C. § 2703. Taking the view most favorable to the government, I do not find the evidence sufficient to show

that Ruffin caused DeFreitas to do anything. The evidence, according to the government until after the jury began deliberating, was that the two defendants were partners in crime—that, as the government counsel stated in his opening, their landlord-tenant relationship "was a corrupt agreement between the parties to violate the public trust and to fraudulently disperse the funds" (SM 22). The evidence, according to the government, required their conviction as conspirators. This is not consistent with any idea that Ruffin directed, initiated, or even suggested the scheme—much less caused DeFreitas to act as an innocent intermediary. As I view the evidence, it indicates just as much that DeFreitas caused Ruffin to act, as the other way around. For example, the building owned by Ruffin which was the vehicle for the fraud, had formerly been owned by Baum. The first person to negotiate with Baum for a purchase of the building was not Ruffin but DeFreitas (SM 340–41). There is no evidence that Ruffin caused DeFreitas to do this. The evidence would indicate that DeFreitas caused Ruffin to buy the building.

The evidence is not sufficient to sustain the verdict.

7.

It seems fundamentally unfair to allow the government, after the jury has started to deliberate, completely to shift its position in order to salvage a conviction of Ruffin.

Up until the arrival of the jury's note, the government had insisted on the guilt of DeFreitas. She was no innocent intermediary, caused to act by Ruffin. She bought the building (SM 1393), the government argued to the jury (SM 1396):

> Now, at that time, . . . who was running the ship, who was the captain of this vessel when it was sailing? Who presented the lease to the Board for approval? Who, ladies and gentlemen, hired and fired? Who signed all the checks? * * *
>
> Ladies and gentlemen, it was Olga DeFreitas.
>
> Mr. Ruffin was the outside man. Miss DeFreitas was the inside woman.

Ruffin never had a chance to defend himself against the charge that he caused DeFreitas to act as an innocent intermediary. Neither he nor DeFreitas testified at the trial. Had the government not asked for an indictment of DeFreitas and had the government at trial pursued a causer-innocent intermediary theory, Ruffin may well have been able to secure the testimony of DeFreitas and may have elected to testify. The shift by the government came after the case had been submitted to the jury. Ruffin was never able to determine his strategy with knowledge of the government's present position.

8.

Wholly aside from any question of unfairness, I believe that there was a violation of the constitutional rights of Ruffin. Under the Fifth Amendment, a defendant cannot be tried for a felony charge except on indictment of a grand jury. The variation here between the indictment and the proof (assuming for present purposes that the proof is sufficient) "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury". Ruffin "was convicted on a charge the grand jury never made against him. This was fatal error". *Stirone v. United States,* 361 U.S. 212, 217, 219, 80 S.Ct. 270, 273, 274, 4 L.Ed.2d 252 (1960).

The indictment, however imprecise its wording, charged that DeFreitas—having the capacity—violated 42 U.S.C. § 2703 as the principal and that Ruffin—not having the capacity—aided and abetted her as an accessory before the fact in the commission of the substantive offense. The conviction of Ruffin is being sustained on the ground that he was charged and convicted of a violation as the principal of 42 U.S.C. § 2703 by the use of the acquitted co-defendant DeFreitas as an innocent intermediary. I share the point of view of the dissenting judges in *United States v. Bryan,* 483 F.2d 88, 98–9 (3d Cir. 1973) (en banc 4–3 decision) expressed as follows:

Now, after the case is closed, and after Bryan has lost the opportunity to testify in his own behalf, the majority sustains the conviction on a theory that the grand jury did not consider, that the Government's case did not present, and of which neither before nor during the trial was Bryan given notice.

I would reverse the judgment appealed from and remand the cause with instructions to the District Court to set aside the verdict as to appellant Ruffin on counts two, three, and four, to vacate the judgment of conviction on those counts, and to enter a judgment of acquittal on those counts.