**UNITED STATES of America, Appellee,**

v.

**Gilberto LUGO–BAEZ, Appellant.**

**No. 19378.**

United States Court of Appeals Eighth Circuit.

June 20, 1969.

---

* Hon. Roger D. Foley, Jr., United States District Judge, District of Nevada, sitting by designation.

John L. Boeger, St. Louis, Mo., for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., St. Louis, Mo., on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Gilberto Lugo-Baez, defendant, was convicted by trial to a jury on each count of a two-count indictment charging him with unlawfully transporting heroin from Los Angeles, California to St.

Louis, Missouri in violation of 26 U.S.C. § 4724(b) and with unlawfully concealing heroin imported illegally into the United States in violation of 21 U.S.C. § 174.[1] The trial court sentenced defendant to a term of eight years on each count. We affirm the judgment of conviction.

Broadly stated, defendant here asserts as grounds for reversal:

(a) The impropriety of the trial court's denial of his motion to suppress evidence of the heroin seized from the undergarments of Amparo Del Castillo-Angulo, defendant's girl friend who accompanied him to St. Louis from Tijuana, Mexico, during the simultaneous arrest and search of defendant and Angulo. It is contended that defendant had standing to challenge the search of Angulo as the officers lacked probable cause for her arrest, and consequently the search was violative of the Fourth Amendment;

(b) The insufficiency and vagueness of the indictment as it did not allege willfulness, an essential element of the crime;

(c) The insufficiency of the evidence to support the conviction of defendant as an aider and abettor; and

(d) The statutes under which defendant was convicted are constitutionally invalid because they violate defendant's Fifth Amendment rights.

A pretrial hearing was held upon the motion to suppress. Richard M. Patch, an agent of the Federal Bureau of Narcotics, testified at this hearing as well as at the trial. In the former, he testified that he received a call from a named reliable informant who had been assisting the Government for some time, advising him that she had received a long distance telephone call from a person who gave the name of Gilbert. Gilbert explained that he had gotten her number from a friend of hers in Los Angeles who told him that she was a narcotics dealer in St. Louis. The informant told "Gilbert" in the first telephone conversation that she was interested in buying ten or twelve ounces of heroin but would first have to check with her "old man," and that she would have to call him back. Gilbert gave her his Los Angeles telephone number and told her to ask for Room 10. The Government ascertained that this number was that of a motel in Los Angeles. The informant immediately notified Agent Patch and on the following day he called the telephone number in Los Angeles and talked to someone in Room 10 who told him that Gilbert was in Tijuana, Mexico to get some "stuff." "Stuff" in the jargon of narcotics peddlers and users means heroin.[2] Again, on December 10 and 11, Agent Patch made unsuccessful attempts to communicate with Gilbert by telephone.

---

1. The pertinent part of 26 U.S.C. § 4724 (b) provides:

"(b) Transportation.—Except as otherwise provided in this subsection, it shall be unlawful for any person to send, ship, carry, or deliver narcotic drugs from any State or Territory or the District of Columbia, or any insular possession of the United States, into any other State or Territory or the District of Columbia, or any insular possession of the United States."

21 U.S.C. § 174 in pertinent part provides:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000 * * *. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. See Mack v. United States, 326 F.2d 481, 484 (8th Cir. 1964), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964), and cases therein cited.

On December 12 Agents Patch and Hoerner were at the informant's residence when Gilbert called shortly after six p. m. St. Louis time and talked to Patch, assuming that he was the informant's "old man." Gilbert advised that he was at the Los Angeles Airport and was bringing approximately ten ounces of heroin to St. Louis. Gilbert told Patch that he had plane reservations on TWA Flight 96, which would arrive in St. Louis at 11:40 p. m., and that he also was on stand-by on Flight 78, which would arrive in St. Louis at 9:40 p. m. St. Louis time. (There appears to be a clerical error as to the exact arrival time of this flight as there is testimony that its arrival time was 9:40 p. m. and also 10:40 p. m.) Gilbert described himself and what he would be wearing and advised that he would be accompanied by his girl friend, who he also described, and said she would be attired in a green slack suit.

Agent Patch and local officers went to the airport in time to meet the first plane and recognized defendant and Angulo as they deplaned from the descriptions furnished by Gilbert. The officers watched the two as they went to the baggage area to receive their luggage and then arrested them. Finding nothing in a cursory search, they were taken into the police office at the airport where their luggage was searched and a more thorough search of their persons was conducted. Angulo was taken by a policewoman into a separate room in the police office and the search there produced a package wrapped in a cellophane bag, the contents of which were determined by chemical analysis to be heroin in substantially the amount Gilbert had advised he would bring to St. Louis.

Codefendant Angulo testified that she had lived several days with defendant in a hotel in Tijuana, Mexico, and that on December 12 they left Tijuana and drove to San Diego, California in defendant's car; from San Diego they went by plane directly to the Los Angeles Airport where she saw defendant make a telephone call which he said was to someone in St. Louis who was expecting them to bring a package. He gave her the package and she went into the ladies' room and hid it in her underclothing, but professed that she did not look at it. She assumed something was wrong because she was to hide the package in her clothing. Angulo's trial was set for a future date, and the record here does not show what disposition has been made of her case. Angulo could not speak English and testified through an interpreter. Defendant did not testify nor offer any evidence in his defense.

It is first asserted that the trial court erred in overruling defendant's motion to suppress as the heroin seized from the codefendant and introduced in evidence was the result of a warrantless and unlawful search for the reason that the officers lacked probable cause. As a preliminary, defendant cites and analyzes cases on defendant's standing to challenge the search, and the Government also presents its argument based on analysis of cases cited by defendant as well as other cases, none of which we think has any bearing on the issue here because common sense dictated that under the circumstances in this case the officers had probable cause to arrest both defendant and Angulo and simultaneously to search them, and indeed would have been derelict in their duty had they failed to act as they did. We realize that the time element is not the decisive factor in the reasonableness of a warrantless arrest and search, but nonetheless point out that Gilbert's call to Agent Patch was a few minutes after six p. m. and it is doubtful that the officers could have had time to prepare the necessary affidavits and obtain warrants from a magistrate and then proceed to the airport in time to be there upon arrival of the first of the two flights defendant had said they might take. Indeed, they arrived on the earlier nonstop flight from Los Angeles.

We have often and recently stated the general rule on the standard of probable cause applicable for a warrantless arrest. In Theriault v. United

States, 401 F.2d 79, 81 (8th Cir. 1968), this court, speaking through Judge Blackmun, said:

> "The Supreme Court and this court on many occasions have enunciated the standard of probable cause applicable for a warrantless arrest. 'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.' (Citations omitted.)"

It is settled law that a search incident to a lawful arrest is legal.[3] This is a much stronger case on the facts than was Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), where the Court held there was probable cause for an arrest when a reliable, paid informant told the narcotics agent that Draper was peddling narcotics, had gone from Chicago to Denver, and would return on the morning of the 8th or 9th by train, describing his dress, his walk, and the fact that he would be carrying a tan zipper bag. In the instant case, we have not only the information furnished the narcotics agents by a reliable and named informant, but also the numerous telephone calls, and particularly the one from defendant advising that he was leaving Los Angeles accompanied by his girl friend, giving their descriptions, the numbers of the flights, etc., for the delivery of the narcotics. The information furnished by defendant himself strongly buttresses the information obtained by the informant, either of which in our view would be sufficient to justify warrantless arrests of both defendant and codefendant and their immediate search incident to their lawful arrests.

It is next asserted that the trial court erred in overruling defendant's motion to dismiss which was based on the ground that the indictment was insufficient and vague as it failed to allege an essential element (willfulness) of the crime for which defendant was convicted. Neither of the statutes under which defendant was convicted contains the word "willfulness" and the indictment on each count was framed in the words of the respective statute.[4]

All that is required under Fed.R.Crim. P. 7(c) is that the indictment be a plain, concise and definite written statement of the essential facts constituting the offense charged. This we noted in Rood v. United States, 340 F.2d 506, 510 (8th Cir. 1965), cert. denied, 381 U.S. 906, 85 S.Ct. 1452, 14 L.Ed.2d 287 (1965), where we said:

> "An indictment is deemed good when it informs the accused of the offense with which he is charged with sufficient specificity to enable him to prepare his defense and to avoid the danger of the accused being again prosecuted for the same offense."

In *Rood,* we quoted from Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 3

---

3. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Moodyes v. United States, 400 F.2d 360 (8th Cir. 1968).

4. The indictment, omitting its formal parts, is as follows:
   "That on or about December 12, 1967, GILBERTO LUGO-BAEZ and AMPARO DEL CASTILLO-ANGULO did unlawfully carry 234.4 grams, more or less, of heroin, a derivative of opium, from the City of Los Angeles, in the State of California, into the County of St. Louis, in the State of Missouri, within the Eastern Division of the Eastern District of Missouri.

   "In violation of Section 4724(b), Title 26, United States Code.
   "That on or about December 12, 1967, in the County of St. Louis, in the State of Missouri, within the Eastern Division of the Eastern District of Missouri, GILBERTO LUGO-BAEZ and AMPARO DEL CASTILLO-ANGULO did conceal and facilitate the concealment of a certain narcotic drug, to wit, 234.4 grams, more or less, of heroin, a derivative of opium, then knowing that said narcotic drug had been imported into the United States of America contrary to law.
   "In violation of Section 174, Title 21, United States Code."

L.Ed.2d 1041 (1959), wherein the Supreme Court observed that:

"Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. (Citations omitted.) This has been a salutary development in the criminal law."

We also noted in *Rood* that the Supreme Court stated in Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932):

"The rigor of old common law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded."

Obviously, defendant here knew what he was charged with and was afforded ample opportunity thereby to provide a defense which he failed to do, and, of course, the indictment, specifying the dates as well as the crimes in substantially the language of the statutes, obviates any danger of the accused being prosecuted for the same offense.

■ Defendant argues, however, that he was convicted as an aider and abettor under 18 U.S.C. § 2(b), which specifies that an aider and abettor must willfully cause the crime to be committed. The verdict returned by the jury was a general one and we note that the court did give an aiding and abetting instruction in which the jury was told that willfulness was an essential element of the crime of aiding and abetting. Thus, there could be no prejudice even if the jury's conclusion of guilt was founded on its belief that defendant was an aider and abettor. It is well settled that a person may be convicted as an aider and abettor even though the indictment does not specifically charge him in that capacity. Latham v. United States, 407 F.2d 1, 4 (8th Cir. 1969); Theriault v. United States, *supra*, 401 F.2d at 85; Nassif v. United States, 370 F.2d 147, 155 (8th Cir. 1966).

The indictment here was unquestionably sufficient and defendant's argument to the contrary is specious.

■ Next, defendant asserts that the evidence was insufficient to support his conviction as an aider and abettor because the evidence was insufficient to justify a conviction of Angulo, the co-defendant, of the substantive offense. We have pointed out that the jury's verdict was a general one, but we add that the evidence would suffice to support a verdict of Angulo's guilt had she been on trial. It is elementary that we must consider, in testing the evidence to determine its sufficiency, all the evidence most favorable to the sustaining of the jury verdict. Leffler v. United States, 409 F.2d 44 (8th Cir. 1969). When the evidence is so considered, it is ample to support a conviction of defendant.

Finally, defendant contends that 26 U.S.C. § 4724(b) and 21 U.S.C. § 174, the statutes under which he was convicted, are invalid for the reason that they violate certain constitutional rights guaranteed by the Fifth Amendment. Defendant contends that § 4724(b) is invalid under the rationale of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), and a number of Eighth Circuit cases following the teaching of the Supreme Court.[5]

Since the briefs were submitted to us, the Supreme Court on May 19, 1969 handed down its opinion in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), wherein the Court discussed its former decisions in relation to the Marijuana Tax Act, 26 U.S.C. § 4741 et seq. The Court held in *Leary* that, when timely raised, the Fifth Amendment affords a complete defense to the Marijuana Tax Act insofar as it imposes a tax on the transfer of

5.  Sizemore v. United States, 393 F.2d 656 (8th Cir. 1968); Drennon v. United States, 393 F.2d 342 (8th Cir. 1968);

Dillon v. United States, 389 F.2d 381 (8th Cir. 1968).

marijuana.[6] However, it appears to us from the language that Mr. Justice Harlan used in *Leary,* 394 U.S. at 21, 89 S.Ct. at 1540, that the Supreme Court has already distinguished the marijuana statutes at least from § 4724(b) by the following statement:

> "However, the transfer provisions differed in that the Narcotics Act provided that no one except a registrant could legally obtain an order form, see 26 U.S.C. § 4705(g), while the Firearms Act merely imposed a $200 tax upon each transfer of a firearm covered by the Act."

Undoubtedly the *Leary* opinion will bring forth a great number of lower federal court opinions concerning the instant statute, but as we interpret *Leary* it is nearly an invitation by the Supreme Court to uphold the narcotics statutes, even though they were not before the Court nor specifically involved.

Defendant also contends that the statutory presumption of § 174 creates an unconstitutional burden compelling defendant to testify in violation of his right against self-incrimination; that, under the facts of this case, since the defendant did not testify the court's instruction setting forth the terms of the statute was improper comment on defendant's failure to testify, and, asserting the reasoning that was subsequently adopted in *Leary* by the Supreme Court, that the presumption denies defendant due process of law.

The first two contentions were decided adversely to defendant by the Third Circuit's opinion in United States v. Turner, 404 F.2d 782, 784 (3rd Cir. 1968). In *Turner,* the court said:

> "The presumptions provided by 21 U.S.C. § 174 and 26 U.S.C. § 4704(a) shift the burden of going forward with evidence once the Government has established possession (cf. Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)) and do not violate the self-incrimination clause of the Fifth Amendment. *Griffin* [Grif-

fin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)] and *Jackson* [United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)] are not controlling because the language of §§ 174 and 4704 (a) neither constitutes unfavorable comment on the accused's failure to testify, nor does it have an 'unnecessary and therefore excessive' chilling effect on the exercise of that privilege * * *."

We note that subsequent to the Court's holding in *Marchetti, Grosso* and *Haynes,* the Ninth Circuit on March 13, 1968 upheld the validity of § 174 in Morgan v. United States, 391 F.2d 237 (9th Cir. 1968), *cert. denied,* 393 U.S. 853, 89 S.Ct. 91, 21 L.Ed.2d 122 (1968). The Ninth Circuit in the later case of Montgomery v. United States, 407 F.2d 1312, 1313 (9th Cir. 1969), said:

> "Appellant contends that 21 U.S.C. § 174 is unconstitutional under the holding of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). We disagree. Section 174 involves no registration or licensing procedures and does not require a person to incriminate himself."

We think that § 174 can be distinguished from the *Leary* opinion for a number of reasons which we will only discuss briefly because the facts in this case are such that the jury was bound to have inferred from the uncontradicted evidence that the defendant obtained the heroin in Mexico, proceeded immediately to the Los Angeles Airport, made his telephone call and caught a flight into St. Louis where he and his traveling companion were validly arrested and searched, and the heroin which he advised would be delivered was found on his codefendant's person. It is rare indeed in a case of this kind for the Government to be in a position to prove that the defendant actually transported narcotics into the United States and thence

---

6. See United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969).

from one state to another in violation of the Act.

In *Leary* the Court discussed Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and two subsequent cases on the constitutionality of criminal statutory presumptions, United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965) and United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). Mr. Justice Harlan, speaking for the majority, stated that he thought that a statutory presumption must be regarded as irrational or arbitrary, and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.

While the trial court in this case did at the commencement of its charge read the indictment and the statutes under which defendant was indicted, including the statutory presumption of § 174 (see n. 1), it is singular to note that subsequently the court instructed the jury as follows:

> "In order to convict the defendant Baez under Count II of the indictment, you must find beyond a reasonable doubt on all the following propositions: (1) That defendant Baez concealed or facilitated the concealment of heroin on or about December 12, 1967; (2) that the heroin was imported into the United States contrary to law; (3) that defendant Baez knew the heroin was imported or brought into the United States contrary to law; and (4) that defendant Baez knew he was concealing or facilitating the concealment of heroin."

In a case where the evidence is so overwhelming and uncontradicted and where the jury could not infer anything but that the defendant transported the heroin from Tijuana, Mexico to the Los Angeles Airport and then to St. Louis, the reading of the second paragraph of

§ 174 could not have prejudiced the defendant in any manner or tainted his trial even if that provision of the statute should ultimately be held unconstitutional. There are other distinctions in *Leary* that seem obvious. For example, see the Court's statement in *Leary*, 394 U.S. at 44–46, 89 S.Ct. at 1552–1553, in which it cites Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), and then poses the question: " * * * whether it can be said with substantial assurance that one in possession of marijuana is more likely than not to know that his marijuana was illegally imported." The Court went on to say that even if it was assumed that the assembled data was sufficient to justify the inference of illegal importation, it by no means follows that a majority of marijuana possessors know that their marijuana was illegally imported. Absent such a showing in a marijuana case, the Court said that it did not believe that the inference of knowledge can be sustained solely because of the assumed validity of the "importation presumption." The Court observed that any such proposition that a majority of marijuana possessors "know" that their marijuana was illegally imported would depend on an intermediate premise: that most marijuana possessors are aware of the level of importation and have deduced that their own marijuana was grown abroad. Mr. Justice Harlan then stated: "This intermediate step might be thought justified by common sense if it were proved that little or no marijuana is grown in this country." There was no proof in this case of statistics as to whether or not any or an infinitesimal amount of poppy seeds are grown in this country, but it is a matter of common knowledge it does not grow wild as does marijuana over the United States.[7] As we read *Leary*, this fact alone justifies a distinction from the Court's conclusion in the marijuana cases.

We refrain from further discussion other than to reiterate that the asserted

---

7. See Morgan v. United States, 391 F.2d 237, 238 (9th Cir. 1968), cert. denied, 393 U.S. 853, 89 S.Ct. 91, 21 L.Ed.2d 122 (1968).

constitutional infirmities in the statutes complained of are inapplicable to the facts in the instant case. In any event, we would refrain from declaring said statutes unconstitutional until the Supreme Court specifically makes such a ruling.

Defendant here had a fair trial and was represented by competent counsel. His guilt of violation of the statutes involved cannot be questioned, and the judgment of conviction is affirmed.