UNITED STATES of America,
Appellant,

v.

**Michael John McGLYNN and Kevin John
Schantzen, Appellees.**

No. 81–1618.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1981.

Decided March 1, 1982.

Rehearing Denied March 23, 1982.

John M. Lee, Asst. U. S. Atty., Janice M. Symchych, Asst. U. S. Atty., argued, Daniel W. Schermer, Asst. U. S. Atty., D.Minn., Minneapolis, Minn., Dwight L. Pringle, Legal Intern, for appellant.

Scott F. Tilsen, argued, Asst. Federal Defender, D.Minn., Minneapolis, Minn., for appellee Schantzen.

John R. Wylde, argued, Minneapolis, Minn., for appellee McGlynn.

Before LAY, Chief Judge, and HENLEY and ARNOLD, Circuit Judges.

HENLEY, Circuit Judge.

The United States has appealed an order of the United States District Court for the District of Minnesota granting appellee Kevin John Schantzen's motion to suppress evidence taken from his person, and also granting appellee Michael John McGlynn's motion to suppress evidence taken from his person and seized from his automobile pursuant to a search warrant. We reverse and remand.

The essential facts as set forth in the magistrate's report and recommendation are not disputed. On September 9, 1980 Officer Ronald Johnson, a police officer in the Narcotics Division of the Minneapolis Police Department, received information from Officer Piazza of the Robbery Division that four hospital pharmacies in Minnesota and South Dakota had been robbed within the past month.[1] Large quantities of dilaudid and morphine had been taken, and the robber in each case was described as a

---

1. The indictment indicates that the first of these robberies took place in Grand Forks, North Dakota on July 20, 1980, and that the most recent of the robberies took place on August 31, 1980 in Rochester, Minnesota. Because the information concerning these robberies was relayed to Officer Johnson on September 9, 1980, and because the search warrant was issued on the same day, we think that appellees' argument that the information was stale is without merit.

white male, 5′4″ to 5′5″ in height, wearing a nurse's uniform and wig.

An informant had advised Piazza that Schantzen had committed the robberies. In addition, Piazza had learned that Schantzen was 5′4″ tall and was residing at the 180 Degree Halfway House with appellee McGlynn. All of this information was passed on to Officer Johnson.

A second informant told Officer Johnson that McGlynn was distributing large quantities of dilaudid and morphine that had been taken in hospital pharmacy robberies. In the past, this informant had supplied information leading to arrests and convictions.

Armed with this information, Officer Johnson placed Schantzen and McGlynn under surveillance. On September 9, 1980 McGlynn was seen leaving his place of employment and driving to the residence of Steven Towe, Schantzen's half-brother. McGlynn was observed to enter that residence, and about two minutes later he left the Towe residence and drove to the Halfway House. He parked his car (a Mazda) on the street and entered the building. A short time later, Officer Brademan of the Narcotics Squad observed Schantzen and Towe come out of the Halfway House and approach McGlynn's car. Schantzen entered the vehicle, reached under the front seat, and emerged with a rather thick envelope.

Schantzen and Towe then entered a blue Lincoln Continental and drove approximately one and one-half blocks, where they parked directly behind an undercover narcotics surveillance vehicle. Officer Shanahan, the occupant of that vehicle, subsequently radioed that the Lincoln's occupants appeared to be exchanging something. Officer Brademan thereupon left his vehicle and walked on the sidewalk past the Lincoln. As he approached it from the rear, he noticed the front passenger seat occupant looking repeatedly over his left shoulder. He then observed a large amount of money, as well as the previously mentioned envelope, spread out on the front seat of the Lincoln. Officer Brademan concluded that he was observing a drug transaction. He therefore identified himself as a police officer, ordered the occupants to come out of the Lincoln, and arrested them. The money, totalling $4,680.00, was seized, and Schantzen and Towe were advised of their rights. When asked who the money belonged to, neither would reply.

Five to ten minutes after these arrests, McGlynn drove up in his Mazda, stopped, and asked what was going on. He was promptly arrested, and $2,400.00 was seized from his person.

The officers then applied for and obtained from a Hennepin County District Judge a warrant for the search of McGlynn's Mazda.[2] A search of that vehicle pursuant to the warrant yielded morphine tablets and a nurse's uniform.

At the suppression hearing, the magistrate heard the testimony of several of the officers involved in the surveillance, as well as the testimony of Officers Johnson and Piazza. He then made extensive findings of fact, and, in a well-reasoned memorandum, recommended that the motions to suppress be denied. Upon its examination of "the briefs and arguments of counsel, and the files, records, and proceedings herein ..."[3], however, the district court ordered that the subject evidence be suppressed.

---

**2.** The affidavit filed by Officer Johnson recited facts substantially similar to those described in text, with the following exceptions:

(1) The affidavit did not recite that the Lincoln had been driven any distance by Schantzen and Towe;

(2) The affidavit did not recite that Officer Shanahan had observed Schantzen and Towe exchanging something in the Lincoln;

(3) The affidavit did not recite that Officer Brademan had observed one of the occupants of the Lincoln looking over his shoulder.

**3.** We observe that detailed findings of fact and conclusions of law on the part of the district courts are generally to be encouraged since a paucity of such findings may make difficult a review of the district courts' orders. *See Denofre v. Transportation Insurance Rating Bureau*, 532 F.2d 43, 45 (7th Cir. 1976); *Christensen v. Great Plains Gas Co.*, 418 F.2d 995, 1000 (8th Cir. 1969); *Fehringer v. Bluebeard's Castle, Inc.*, 395 F.2d 851 (3d Cir. 1968); *Berguido v. Eastern Air Lines, Inc.*, 369 F.2d 874, 877 (3d Cir. 1966), *cert. denied*, 390 U.S. 996, 88 S.Ct.

The underlying facts are fully set forth in the magistrate's report and recommendation, and these facts are undisputed. And we observe that the district court's order granting the motions for suppression can fairly be said to result only from the following conclusions of the district judge:

(1) That the evidence seized from Schantzen was inadmissible, either because his arrest was not supported by probable cause or because the seizure of the items in his possession was impermissible under the fourth amendment;

(2) That the evidence seized from McGlynn's person was inadmissible, either because McGlynn's arrest was not supported by probable cause or because the evidence seized from his person was impermissibly seized; and

(3) That the affidavit accompanying Officer Johnson's application for the warrant could not support the issuance of the warrant, because some of the information contained therein had been obtained as a result of violations of the appellees' fourth amendment rights, and because the other information contained in the affidavit was insufficient to support the issuance of the warrant.[4]

■ The general rule in this circuit is that a district court's determinations, made in the context of a motion to suppress, as to the validity of a warrant or the existence of circumstances justifying a warrantless arrest are to be reviewed under the "clearly erroneous" standard. *See United States v. Jones*, 635 F.2d 1357, 1360 (8th Cir. 1980); *Campbell v. Minnesota*, 553 F.2d 40, 41-42 (8th Cir. 1977). Under this standard, this court ordinarily will affirm a decision unless there is not substantial evidence to support it, it evolves from an erroneous conception of the applicable law, or, upon

considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1270 (8th Cir.), cert. denied, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Where as here the facts are essentially undisputed, in determining whether an erroneous conception of law is involved or whether upon the record as a whole a mistake has been made, this court may apply the law to those facts. *Cf. Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976).

*The Arrest and Search of Schantzen.*

■ In determining whether probable cause exists on the part of a police officer making a warrantless arrest, we are guided by certain general principles. First, a judicial determination as to the existence of probable cause should not rest on isolated facts, but rather on "the cumulative effect of such facts in the totality of the circumstances." *United States v. Peep*, 490 F.2d 903, 907 (8th Cir. 1974). *See United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981); *Jackson v. United States*, 408 F.2d 1165, 1171 (8th Cir.), cert. denied, 396 U.S. 862, 90 S.Ct. 135, 24 L.Ed.2d 114 (1969). In addition, "probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). *See United States v. Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964).

■ Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious and prudent police offi-

---

1194, 20 L.Ed.2d 95 (1968); *Skelly Oil Co. v. Holloway*, 171 F.2d 670, 673 (8th Cir. 1948).

However, the necessity for detailed findings may be obviated where there are "findings, stated either in the court's opinion or separately which are sufficient to indicate the factual basis for the ultimate conclusion," *Kelley v. Everglades Drainage District*, 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943),

cited in *Christensen v. Great Plains Gas Co.*, 418 F.2d at 1000, or where the essential underlying facts are undisputed. *A R Inc. v. Electro-Voice, Inc.*, 311 F.2d 508, 513 (7th Cir. 1962).

4. In these circumstances we see no need to remand for a more detailed rendition of the district court's ultimate conclusions of law. *See Kelley v. Everglades Drainage District*, 319 U.S. at 419, 63 S.Ct. at 1143.

cer at the time of the arrest, *see Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *United States v. Peep*, 490 F.2d at 906, and the arresting officer is entitled to assess the circumstances in light of his experience. *See United States v. Ortiz*, 422 U.S. 891, 897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975); *United States v. Brignoni-Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883.

Officer Johnson testified that prior to the surveillance, he had relayed the information available to him to cooperating officers, including Officer Brademan, a police officer who had fifteen years of experience with the Narcotics Squad. In addition, Officer Brademan had been informed or had observed that Schantzen and Towe had removed a package from beneath the front seat of McGlynn's Mazda, had entered another car and driven one and one-half blocks, had parked at the side of the street, and that they appeared to be exchanging something. He observed Towe and Schantzen looking furtively over their shoulders, and also a large amount of cash being exchanged.

The government does not contend that any of the items of information available to Officer Brademan was sufficient, standing alone, to give him probable cause to believe that a narcotics transaction was taking place. It does contend, however, that the information and the observations of Officer Brademan, when considered as a whole, were sufficient to give him probable cause to arrest Schantzen.

Schantzen argues that the activities observed by the officers were non-criminal in nature, and thus were not entitled to any weight in the probable cause determination. Furtive actions, however, as well as other conduct arguably innocent to the lay person, may be very significant to a trained observer. *See United States v. Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *United States v. Bernard*, 607 F.2d 1257, 1266–67 (9th Cir. 1979). *Cf. Terry v. Ohio*, 392 U.S. at 22–23,

88 S.Ct. at 1880–81 (experienced officer's stop of persons walking back and forth in front of a store permissible in the circumstances present). This is especially true where the officer's observations are coupled with other, specific knowledge on his part. *See United States v. Cortez*, 449 U.S. at 418–22, 101 S.Ct. at 695–97; *Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

▪ In sum, Officer Brademan had observed a series of events having all the indicia of a narcotics transaction except the presence of narcotics. When his observations are viewed in light of the other information in his possession, we are not prepared to hold that he did not have probable cause to arrest Schantzen, even though the events observed were arguably innocent in nature.

▪ Given that Schantzen's arrest was valid, we think that the items seized from Schantzen's person and from the front seat of the Lincoln [5] were validly seized under the "search incident to a valid arrest" exception. *See New York v. Belton*, 453 U.S. 454, 459, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). In *Chimel*, the Supreme Court stated that

> it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.

395 U.S. at 763, 89 S.Ct. at 2040. We think the reasoning in *Chimel* is applicable to the circumstances of the case before us, and hold that the seizure of the evidence from Schantzen's person and from the front seat of the Lincoln was constitutionally permissible.

---

**5.** It does not appear that the search of the Lincoln extended beyond a search of the front seat of the car.

*The Arrest and Search of McGlynn.*

■ An analysis similar to that above undertaken indicates that McGlynn's arrest was also supported by probable cause. In particular, we observe that a package containing money to be used in the suspected narcotics transaction had been taken from beneath the front seat of McGlynn's Mazda shortly after he had left the Mazda and gone into the Halfway House. In addition, McGlynn had driven up to the scene of Schantzen's arrest within ten minutes of the arrest. Although a person's mere presence at the scene of a crime does not establish probable cause for a warrantless arrest, *United States v. Barber*, 557 F.2d 628, 631 (8th Cir. 1977), we think that Officer Brademan was reasonable in concluding that there was a strong probability that McGlynn had been instrumental in making the package available to his roommate, Schantzen, and that McGlynn was intimately acquainted with the transaction that took place between Schantzen and Towe. These circumstances lead us to the inescapable conclusion that probable cause existed for McGlynn's arrest, and that the search of McGlynn's person incident to his arrest was likewise permissible. *See Chimel v. California*, 395 U.S. at 762–63, 89 S.Ct. at 2039–40.

*The Validity of the Warrant.*

■ With regard to the validity of the search warrant, we note initially that neither informant's tip, standing alone, contains sufficient indications of veracity to withstand scrutiny under the standards set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

The information supplied to Officer Piazza fails both parts of the *Aguilar* test because the evidence adduced at the suppression hearing does not show that Piazza's informant had, in the past, supplied information leading to an arrest or conviction, nor does it indicate the bases for the informant's belief that Schantzen had committed the robberies. *See Aguilar v. Texas*, 378 U.S. at 110–13, 84 S.Ct. at 1511–13. Similarly, although Officer Johnson's informant had previously supplied information leading to an arrest and conviction, the information nevertheless fails to pass muster under the

second part of the *Aguilar* test because the affidavit does not describe how Officer Johnson's informant had acquired his information. *Id.* at 112–13, 84 S.Ct. at 1512–13.

There exists, however, a recognized exception to the *Aguilar* rule. This exception is that a tip that is insufficient under *Aguilar* may nevertheless serve as the basis for a probable cause determination if the reliability of the tip is corroborated by another independent source, *United States v. Bazinet*, 462 F.2d 982, 987–88 (8th Cir.), *cert. denied sub nom. Knox v. United States*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972), or if the accuracy of the information is borne out by independent corroboration by the authorities. *United States v. Schmidt*, 662 F.2d 498, 502 (8th Cir. 1981). *See Spinelli v. United States*, 393 U.S. at 416–17, 89 S.Ct. at 589; *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *United States v. Hunley*, 567 F.2d 822, 825 (8th Cir. 1977).

Here, one of the informants, who had previously given information leading to at least one arrest and conviction, supplied information that McGlynn was distributing large quantities of dilaudid and morphine that had been taken in the hospital pharmacy robberies. The robbery in Grand Forks, North Dakota was specifically mentioned by this informant. The other informant supplied information that Schantzen had committed the robberies, and Officer Johnson had received independent information that Schantzen and McGlynn were roommates.

In *United States v. Wahlquist*, 438 F.2d 219 (8th Cir.), *cert. denied*, 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432 (1971), this court stated:

We are convinced that the interlocking nature of the specific and detailed information discovered during the investigation, which was either verified by personal observation or corroborated by duplicate information from an independent source, buttressed the reliability of each informant so as to give the arresting officers reasonable cause to believe that appellant was involved in a bank robbery.

*Id.* at 222. We find that the reasoning in *Wahlquist* is applicable to the circumstances of the present case, notwithstanding that the information supplied by each informant was not "duplicated" by the other. An issuing magistrate may properly rely on normal inferences drawn from the surrounding circumstances, *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979), and the inference that McGlynn and Schantzen were jointly involved in a common plan to procure and distribute controlled substances appears to us to be inescapable.

Finally, we observe that Schantzen's actions in removing a package from beneath the front seat of McGlynn's Mazda and immediately thereafter engaging in the series of actions which led Officer Brademan to conclude that a narcotics transaction was taking place, when considered with the informants' tips, is supportive of an inference that additional evidence of a conspiracy to procure and sell narcotics might be found in McGlynn's Mazda. Officer Johnson's belief that such evidence would be found is clearly stated in the affidavit accompanying the application for the search warrant, and we think that the magistrate properly concurred in that belief, based on the information contained in the affidavit.

As has been noted, there is a preference to be accorded warrants, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), and considerable deference is to be accorded an issuing magistrate's finding of probable cause. *Spinelli v. United States*, 393 U.S. at 419, 89 S.Ct. at 590; *United States v. Brown*, 584 F.2d at 256.

Accordingly, we reverse the district court's order and remand this case to the district court for further proceedings consistent with this opinion.