*Bice Construction, Inc. v. CIT Corp., Inc., supra,* slip op. at 11.

We have carefully considered the briefs, arguments and the district court order, and conclude that the court's decision is neither clearly erroneous as to its factual determinations nor mistaken as to the law as it was applied to the facts. Accordingly, we affirm pursuant to Rule 14 of the Rules of this court on the basis of the district court's thorough and well-reasoned opinion.

**UNITED STATES of America, Appellee,**

v.

**James Frederick SWAYNE, Appellant.**

**No. 82–1598.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1982.

Decided Feb. 25, 1983.

Thomas E. Dittmeier, U.S. Atty., Richard L. Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Ed Leinster, Ed Leinster, P.A., Orlando, Fla., for appellant.

Before HEANEY and ROSS, Circuit Judges, and HENLEY, Senior Circuit Judge.

ROSS, Circuit Judge.

The appellant, James Swayne, was convicted of possession of cocaine with the intent to distribute in the United States District Court for the Eastern District of Missouri.[1] The case was tried to the court. The appellant urges, as grounds for reversal, that the district court erred in failing to suppress cocaine found in the defendant's luggage and an inculpatory statement made after the arrest. Also, appellant maintains that the court erred in failing to find that insufficient evidence was adduced at trial to support his conviction. We affirm the judgment of the district court.

On January 31, 1982, a government informant, Richard Perez, spoke to Ted Lampus. In the course of the telephone conversation Perez arranged a sale of cocaine. Lampus, in addition to organizing the sale of cocaine, stated he would be accompanied by the appellant Swayne on a flight from Miami to St. Louis. Lampus requested that Perez secure two reservations for a return flight to Florida. A departure time of later that same night or for the early morning of the following day was requested.

Perez communicated this information to the Drug Enforcement Agency (DEA). DEA agents confirmed that Swayne and Lampus were booked on a flight from Miami and had in fact boarded the airliner together. DEA agents in St. Louis arranged with the informant Perez to meet with the suspects and ascertain whether cocaine was present in their luggage. If this was the case Perez was to then signal the waiting DEA agents by tugging on his left ear.

Perez met with the appellant and Lampus at the St. Louis airport. He engaged them in conversation while escorting them to the baggage carousel. Ted Lampus took two bags off the carousel and handed them to the appellant. Lampus took one more bag and the party started to leave the airport. At this point Perez tugged on his left ear to signal the DEA agents.

The DEA agents approached the party and placed them under arrest. Immediately following the arrest the appellant stated "one of us is a snitch, and it's not me." The DEA agents requested permission to search the luggage. Ted Lampus granted this request and a search of his suitcase and briefcase did not reveal any cocaine. The appellant denied consent to search his luggage, though consent to search his briefcase was granted. The search of the appellant's briefcase did not reveal evidence of cocaine.

The DEA agents seized all of the parties' luggage at the time of the arrest. Mr. Coleman, one of the DEA agents, took the appellant's luggage and displayed it to a trained police dog. The dog's reaction indicated the presence of cocaine in the luggage. The next morning agent Coleman procured a search warrant for the luggage. The affidavit included the information supplied by Perez, observations of the agents, and the reaction of the trained police dog. A search of the luggage revealed 576 grams of cocaine. The appellant's inculpatory statement was not included in the affidavit supporting the search warrant.

Appellant contends that the information available to the DEA agents was not sufficient to establish probable cause for his arrest, but only indicated that the appellant was a companion to a drug courier and that he was not directly implicated in any illegal activity, and therefore all

---

1. The Honorable Edward L. Filippine, United States District Judge, presiding.

fruits of the arrest, including the inculpatory statement, should be suppressed. The appellant's contention that the cocaine should have been suppressed is without merit. This would be true even if we were to assume, which we do not, that the arrest was not supported by probable cause. It is apparent from the facts in this case that the affidavit supporting the search warrant did not contain any information which could be considered as fruit of the arrest. It should be noted that in his motion to suppress the appellant conceded that a reasonable suspicion to detain the luggage existed prior to the arrest.[2] In this situation the court must ask whether the evidence in controversy was procured through the exploitation of some illegality. *United States v. Leonard,* 630 F.2d 789, 791 (10th Cir. 1980). If it is concluded that the evidence was produced through the use of sources independent from the illegal activity, then it must be considered admissible. The arrest of the appellant did not further the agent's efforts to procure the cocaine and thus it must be considered admissible.

The legality of the arrest remains in issue, however, as the appellant's inculpatory statement was admitted into evidence at trial. Appellant contends that the admission of this statement was reversible error as it must be considered the fruit of an illegal arrest. The question thus presented to this court is whether the arrest was supported by probable cause.

■ Probable cause exists if at the moment of arrest the "facts and circumstances" within the agent's knowledge and of which "they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the appellant had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

Probable cause for a warrantless arrest "is to be assessed in terms of the circumstances confronting a reasonably cautious

and prudent police officer at the time of the arrest." *United States v. McGlynn,* 671 F.2d 1140, 1143–44 (8th Cir.1982). *See United States v. Luschen,* 614 F.2d 1164, 1171 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980); *United States v. Neumann,* 585 F.2d 355, 357 (8th Cir.1978). However, when the officers' belief rests in large part on an informant's tip there must be disclosed both the circumstances underlying the informant's knowledge, and the circumstances underlying the officer's belief in the informant's reliability. *United States v. Neumann,* 585 F.2d at 357–58.

*United States v. Wentz,* 686 F.2d 653, 656 (8th Cir.1982).

■ Even though Richard Perez was known to defense counsel, he would meet the stringent standards for an undisclosed informant. He was a government informant with an extensive history of providing accurate information. This established his reliability under *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Schmidt,* 662 F.2d 498, 502 (8th Cir.1981). In addition to the history of reliability, the information supplied by Perez was borne out by the independent corroboration of the authorities. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Perez' information was verified in part by the DEA agents in that the reservations made by Perez, the fact that the suspects were traveling together, as well as the time and place of their arrival, were checked and confirmed by the DEA agents. Thus, under established standards, Richard Perez must be considered a reliable informant.

While the information supplied by Perez clearly established probable cause to arrest Lampus, it also established a close link between the appellant and Lampus and placed this relationship in the context of a planned sale of cocaine. The concept of guilt by association is repugnant to our notion of

2. The appellant has not changed his position on this issue in his appeal to this court. *See United States v. Viegas,* 639 F.2d 42, 45 (1st Cir.1980), *cert. denied,* 451 U.S. 970, 101 S.Ct.

2046, 68 L.Ed.2d 348 (1981); *United States v. Corbitt,* 675 F.2d 626, 629 (4th Cir.1982), for a discussion of the standards governing the detention of luggage.

elemental justice and fair play. However, the courts have recognized that in certain circumstances a person's choice of whom to associate with, as well as the nature of that association, must be taken into account when assessing probable cause. *United States v. Vasquez,* 638 F.2d 507, 521, 522 (2d Cir.1980), *cert. denied,* 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981).

The issues present in the case of *United States v. Lugo-Baez,* 412 F.2d 435 (8th Cir. 1969), *cert. denied,* 397 U.S. 966, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970) are quite similar to the issues confronting the court in this case. In *Lugo-Baez,* the defendant contacted a government informant and proposed a sale of heroin. Subsequent negotiations were carried out between government agents and the defendant. These negotiations concluded with a telephone conversation between the defendant and the agents during which the defendant stated he would be flying into St. Louis accompanied by his girl friend. The defendant provided descriptions of the girl friend and himself as well as the arrival time of their flight.

Lugo-Baez and his companion were both arrested at the airport. A search of the companion revealed a package of heroin. This court in upholding the arrest and search of the companion stated: "[C]ommon sense dictated that under the circumstances in this case the officers had probable cause to arrest both defendant and Angulo (the companion) and simultaneously to search them, and indeed would be derelict in their duty had they failed to act as they did." *Id.* at 438.[3] *See also United States v. Buckhanon,* 505 F.2d 1079, 1081 (8th Cir. 1974) where this court upheld the arrest and search of a drug courier's companion. Probable cause was based on the companion's association with a known courier who had a history of using associates in the transportation of heroin.

The recent case of *United States v. Capers,* 685 F.2d 249 (8th Cir.1982), also ad-dresses the question of probable cause to arrest based in part on association with a known suspect. In *Capers* probable cause was established against Yancy, a companion of the defendant. The police, pursuant to a valid warrant, conducted a search of Yancy's home. In the course of this search they uncovered evidence that Yancy was currently accompanied by an unknown person who had spent the previous night at the home. The police were not provided with a name or physical description of this person. Physical evidence uncovered by the search included a suitcase containing a gun and cocaine. Yancy accompanied by an unidentified male drove up to the home while the search was in progress. Both men were promptly arrested. This court found the arrest of the companion (Capers) was supported by probable cause. *Id.* at 251. The information available to the agents in the present case is at least equivalent to that available in *Capers* and *Lugo-Baez.*

In addition to the appellant Swayne's travel arrangements and association with Lampus, the agents observed the appellant taking physical possession of luggage and attempting to exit the airport. The informer's signal to the agents communicated the message that: "These are the parties and cocaine is present somewhere in *their* luggage." The parties carried three suitcases and two briefcases when they attempted to leave the airport. Thus, the agents, due to Perez's signal, had probable cause to believe that the luggage contained contraband. This court in the case of *United States v. Wilkerson,* 478 F.2d 813 (8th Cir.1973) held that probable cause to arrest is established when an individual claims and takes physical control over a duffel bag known to contain contraband. While it is true that in *Wilkerson* only one bag and one person was in issue and that in this case five bags with two owners are implicated, we are not persuaded that the possibilities are so numer-

---

**3.** In addition to the facts available to the authorities, officer Coleman, an eleven year veteran of the DEA, testified that in his experience he had never encountered an unknowing companion of a drug courier. Probable cause must be assessed in light of an officer's knowledge and experience. The meaning of this type of association to an experienced officer should be given some weight. *United States v. McGlynn,* 671 F.2d 1140 (8th Cir.1982).

ous as to negate probable cause. The informant's signal and the subsequent developments conveyed information to the agents which narrowed the scope of their inquiry to five bags held by two suspects.

The agents were not required to establish the appellant's ownership of these bags in a property sense for probable cause to be established. All that was required were sufficient facts to warrant a reasonable man to believe the appellant was exercising ownership and control over the luggage. Certainly it is reasonable to believe that a person leaving an airport with luggage in his possession owns and controls that luggage.

Finally, the agents were also aware that the appellant was traveling from Miami and planned to return that night or early the next morning. Miami is known to be a major source of supply for illegal drugs. This fact and the rapid turnaround time of the parties conforms in part to the drug courier profile. The drug courier profile is a flexible list of common characteristics exhibited by drug couriers as compiled by the DEA.[4] Although probable cause is not established against a person merely because he or she fits within these described behavior patterns, *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980), the fact that a person does exhibit characteristics which also happen to conform to the drug courier profile may be properly taken into account by the court when deciding whether probable cause was established. *United States v. Smith,* 574 F.2d 882, 884 (6th Cir.1978); *cf. United States v. McGlynn, supra,* 671 F.2d 1140.

Probable cause is of course assessed in light of the totality of circumstances surrounding an arrest. In this case the following facts and circumstances established probable cause to arrest the appellant. First, the appellant's close association with a companion who stated his intention to complete a sale of cocaine to a reliable informant. The appellant's association

with this companion must be examined in the context of his companion's intention. This is one of the vital circumstances surrounding the arrest.

The fact that appellant conformed in part to the drug courier profile adds to the reasonableness of the belief that the appellant was not an innocent associate. The point of his departure and destination, and most importantly the speed with which he intended to return, belies a belief that this was an innocent traveler. Once again the circumstances surrounding the appellant's travel arrangements must be considered. His reservations were made by a government informant at the request of his traveling companion and this request was made during the same conversation in which the sale of cocaine was arranged.

The appellant took physical possession of luggage which the agents, due to the informant's signal, had probable cause to believe contained cocaine. Furthermore, the circumstances in which the appellant took physical possession would indicate to a reasonable man that he was exercising ownership and control over the luggage. When all of these facts are considered in light of the circumstances surrounding the arrest we must conclude probable cause was established. Because the appellant's arrest was not illegal the inculpatory statement was properly admitted into evidence.

*Sufficiency of the evidence*

█ The appellant contends that the evidence adduced at trial was insufficient to support his conviction. The thrust of his argument is that there was no evidence demonstrating his knowledgeable participation in the planned sale of cocaine that was not also consistent with the behavior of an innocent bystander. The well established standard of review for challenges to the sufficiency of evidence was reaffirmed by this court in *United States v. Cady,* 567 F.2d 771 (8th Cir.1977) wherein we stated:

When the determination of a question of fact is also determinative of the ultimate

---

4. *See United States v. Morin,* 665 F.2d 765, 766 n. 1 (5th Cir.1982) for one compilation of these characteristics.

question of guilt, it is the duty of the appellate court to determine whether there is substantial evidence, taking the view most favorable to the government, to support the fact determination by the trial court. This standard is the same as that used to review a determination made by a jury.

*Id.* at 774 (citations omitted). Furthermore, while the evidence must be consistent with guilt, it need not be inconsistent with every other reasonable hypothesis. The essential question is whether the entire body of evidence is sufficient to convince the trier of fact, beyond a reasonable doubt, that the defendant is guilty. *United States v. Hardesty,* 645 F.2d 612, 614 (8th Cir.1981).

The evidence introduced at trial established a very close link between the appellant who clearly intended to complete a sale of cocaine on the trip, and his companion. In addition, it was shown that at the time of his arrest the appellant had physical possession of the suitcases containing cocaine. More importantly, immediately upon his arrest the appellant made the highly inculpatory statement that "one of us is a snitch, and it's not me." Finally Officer Coleman testified that the quantity of cocaine in the appellant's possession was too great for personal consumption. All of this evidence indicates knowing possession with intent to distribute.

■ Viewing all the evidence in the light most favorable to the government, we must conclude that there was substantial evidence to support the trial court's conclusion that, beyond a reasonable doubt, the appellant knowingly possessed cocaine with the intent to distribute. Accordingly, we affirm the trial court's judgment.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the DEA agents did not have probable cause to believe that James Swayne had committed or was committing a crime at the time of his arrest, and thus, his conviction should be reversed.

As an initial matter, I disagree with the majority's analysis in rejecting Swayne's effort to suppress the cocaine seized from the luggage he was carrying at the time of his arrest. The stop of Swayne at the airport was a full, formal arrest. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). After that arrest, the DEA agents seized the luggage, and subsequently conducted a search pursuant to a warrant they obtained later. The agents discovered the cocaine during that search. To contend in these circumstances—as does the majority—that Swayne's arrest did not further the discovery of the cocaine is to discard reality in favor of theory and conjecture.

Accordingly, in my view, both the cocaine and the inculpatory statement obtained from Swayne were properly admissible only if the defendant's warrantless arrest was supported by probable cause that he had committed or was committing a narcotics violation. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964).

After reviewing the totality of circumstances, I am convinced that the district court clearly erred in finding that the DEA agents possessed probable cause to arrest Swayne at the time they executed that act.

The DEA agents based Swayne's arrest on three principal factors: (1) his association with Ted Lampus through their travel arrangements, (2) his physical possession of certain luggage while attempting to leave the airport, and (3) the conformance of his conduct to the so-called "drug courier profile." These factors cannot sustain a finding that the DEA agents had probable cause to arrest Swayne.

On January 31, 1982, informant Richard Perez negotiated a cocaine purchase with Ted Lampus. Perez then informed the DEA agents that Lampus had said he would be accompanied on a flight from Miami to St. Louis by a man named "Jimmy Swayne" and that Lampus had requested two reservations for a return flight to Miami the same evening or early the next day. The agents confirmed that Swayne and Lampus were booked on a flight from Miami and in fact had boarded the airplane together.

These facts surely were not sufficient to warrant a prudent person in believing that, at the time of the arrest, Swayne had committed or was committing a crime. As Perez's testimony in the suppression hearing plainly shows, Lampus did not indicate to Perez that Swayne was involved in the transaction in any manner—in either the negotiations, the actual agreement to sell, or the transportation of the cocaine. Swayne, unlike Lampus, was not known to have engaged in narcotics violations. Indeed, the DEA agents were not familiar with Swayne's appearance, nor did they know anything else about him except his name.

When the DEA agents arrested Swayne, whom they had not yet identified, they knew nothing more than he appeared to be accompanying Ted Lampus. Mere association with a known or suspected criminal does not create probable cause to arrest. *E.g., United States v. Capers,* 685 F.2d 249, 251 (8th Cir.1982); *United States v. Barber,* 557 F.2d 628, 631 (8th Cir.1977). The cases cited by the majority do not suggest otherwise.

The majority recognizes that Swayne's association with Lampus, standing alone, is insufficient to sustain the district court's finding. Accordingly, it points to the fact that Swayne took physical possession of two pieces of luggage from Lampus. It also says that when Swayne took this luggage, the informant signaled to the agents that " '[t]hese are the parties and cocaine is present somewhere in *their* luggage.' " As the government conceded in its brief, however, Perez's signal indicated only that the cocaine was located in *"the* luggage," not *"their* luggage." There is no record evidence that Perez knew to whom the various pieces of luggage belonged. Indeed, as the government conceded at oral argument, there is no evidence whatsoever in the record indicating who owned the luggage in which the cocaine was discovered. Therefore, when the DEA agents arrested Swayne, they knew nothing more than that an unidentified man was carrying two pieces of luggage handed to him by Ted Lampus.

The majority's reliance on *United States v. Wilkerson,* 478 F.2d 813 (8th Cir.1973), to attach significance to Swayne's physical possession of the luggage is misplaced. In *Wilkerson,* only one person was involved. *Id.* at 814–815. In that situation, common sense dictated that the luggage most likely belonged to the person carrying it. Here, however, there were five pieces of luggage, none of which was marked with identification, and two persons. Since the agents had no evidence connecting Swayne to the actual drug transaction, they had no reason to believe that any of the luggage—somewhere in which cocaine supposedly was located—belonged to the defendant even though he was carrying two pieces. Accordingly, Swayne's physical possession of two pieces of unidentified luggage added nothing to his association with Lampus, and could not create probable cause to arrest.

Finally, as a catch-all, the majority finds that probable cause existed because Swayne's actions here corresponded to those commonly exhibited by so-called "drug couriers." Specifically, the majority notes that Swayne was traveling to and from Miami, and his plans called for a rapid turnaround time.

I recognize that the fact that a person is engaging in conduct typical of persons unlawfully carrying narcotics may be considered when determining whether probable cause to arrest existed. *See United States v. Smith,* 574 F.2d 882, 884 (6th Cir.1978). Nonetheless, the Supreme Court has made clear that probable cause is not established merely because a person's actions conform to a "drug courier profile." In *Reid v. Georgia,* 448 U.S. 438, 440–441, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1980), the Court refused to find that probable cause existed when it was based principally on such "drug courier"-type conduct. It stated that the circumstances present "describe[d] a very large category of presumably innocent travelers, who would be subject to virtually random seizure were the Court to conclude that as little foundation as there was in this case could justify a seizure." *Id.* at 441, 100 S.Ct. at 2754.

I am likewise persuaded here that the DEA agents possessed insufficient knowledge to have probable cause to make a warrantless arrest of Swayne. To find that probable cause existed in the circumstances here would expose innocent persons to the specter of warrantless arrest and render meaningless the principle that probable cause cannot be based on mere association with a known or suspected criminal.

Thus, the DEA agents acted unconstitutionally in arresting the defendant without probable cause. The question remains whether the connection between this illegal conduct and the evidence obtained from Swayne nonetheless was sufficiently attenuated to permit their use at trial. *Dunaway v. New York, supra,* 442 U.S. at 216, 99 S.Ct. at 2258; *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The record shows that the DEA agents obtained the cocaine and inculpatory statement from Swayne as a direct result of their unconstitutional arrest. Accordingly, I would reverse his conviction.